STATE of Delaware, Plaintiff,

v.

Steven A. WHITE, Defendant.

STATE of Delaware, Plaintiff,

v.

Lewis PRATCHER, Defendant.

Frank C. WHALEN, Jr.*, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted June 12, 1978.

Decided Aug. 15, 1978.

---

* On appeal, but joined by special order for limited purposes of this certification.

James A. Natalie, Jr., Robert B. Anderson, Charles K. Meuse, and Kenneth R. Abraham, Deputy Attys. Gen., for plaintiff.

Richard E. Fairbanks, Jr., Richard M. Baumeister, and David M. Lukoff, Asst. Public Defenders, Wilmington, for defendant White.

Eugene J. Maurer, Jr., Asst. Public Defender, for defendant Pratcher.

Nancy Jane Mullen, Asst. Public Defender and J. Dallas Winslow, Jr., Chief Deputy Public Defender, for appellant Whalen.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

The constitutionality of Delaware's 1977 Statute providing procedures for the imposition of the death penalty (11 *Del.C.* § 4209)[1] is challenged by this certification on various grounds.

The following questions of law have been certified by the Superior Court and accepted by this Court:

"I. Do the provisions of 11 *Del.C.* § 4209(a), (b), (c), (d) and (e) allow consideration of particularized mitigating factors so that the law would be constitutional under *Woodson v. North Carolina* and related cases?

"II. Are the provisions of 11 *Del.C.* § 4209(c) permitting the jury to receive evidence of 'any aggravating circumstance, including but not limited to those aggravating circumstances enumerated in subsection (e)' unconstitutionally broad and vague?

"III. Are the provisions of 11 *Del.C.* § 4209(e)(18) and (19) unconstitutionally vague?

"IV. If the provisions of 11 *Del.C.* § 4209(a) through (h) are unconstitutional, what sentence may be imposed upon conviction for murder in the first degree for offenses committed after May 14, 1977?

"V. Is 11 *Del.C.* § 4209(g) violative of the 8th and 14th amendments of the United States Constitution and Article I, § 11 of the Delaware Constitution in that it does not provide for adequate and meaningful review of the imposition of the death penalty as mandated by *Jurek v. Texas, Proffitt v. Florida* and *Gregg v. Georgia*?

"VI. Is 11 *Del.C.* § 4209(d) violative of the 5th and 14th amendments of the United States Constitution and Article I, § 7 of the Delaware Constitution in that it fails to provide punishment for persons convicted of first degree murder when the jury (or Judge where appropriate) can find a statutory aggravating circumstance beyond a reasonable doubt but fails to recommend death or vice versa?"

We hold the 1977 Death Penalty Statute constitutional on all grounds challenged herein, with two severable exceptions.

II.

For orientation purposes, a brief background statement may be helpful:

Based upon its understanding of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), this Court struck down the then-prevailing Delaware Mercy Statute and upheld the constitutionality of the Delaware First Degree Murder Statute which then permitted a mandatory death penalty. *State v. Dickerson*, Del.Supr., 298 A.2d 761 (1972). Thereafter, like the legislatures in numerous other states in a rash of post-*Furman* attempts to comply with the teachings of *Furman*, the Delaware General Assembly, in 1974, sought to reenact the death penalty as a constitutionally valid punishment by re-defining the crime of first degree murder and by making death the mandatory punishment for violation thereof. This Court upheld the 1974 mandatory death penalty Statute upon its understanding of the *Furman* rule, as an-

---

1. The Statute challenged (11 *Del.C.* § 4209) is attached hereto as Appendix A.

nounced in *Dickerson*, assuming a "uniform application" of the death penalty in the implementation of the new Statute. See *State v. Sheppard*, Del.Supr., 331 A.2d 142 (1974).

In 1976, however, the United States Supreme Court again ruled upon the constitutionality of capital punishment in five landmark cases: *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). In *Woodson* and *Roberts*, mandatory death statutes were declared unconstitutional. In *Gregg, Jurek,* and *Proffitt*, the state death penalty statutes there involved were found constitutional because, in the judgment of the Court, they did not permit the death penalty to be imposed in an arbitrary and capricious manner.

On the basis of *Woodson* and *Roberts*, this Court was obliged to declare Delaware's 1974 mandatory death penalty unconstitutional. See *State v. Spence*, Del. Supr., 367 A.2d 983 (1976). Thereafter, effective May 14, 1977, the General Assembly enacted 11 *Del.C.* § 4209, the Death Penalty Statute here challenged [2] (hereinafter "the Statute").

### III.

The Delaware Statute was obviously fashioned upon the Georgia Statute approved by the United States Supreme Court in *Gregg*. (See 96 S.Ct. at 2920 *et seq.*) The following selection of statements from *Gregg* are worthy of restatement at some length for comprehension of the U.S. Supreme Court's latest rationale on the subject of the death penalty and for guide-line purposes in the determination of the issues presented here:

**2.** This tortuous course of events is not unusual in the recent statutory history of capital punishment among the states. See *Lockett v.*

"While *Furman* did not hold that the infliction of the death penalty *per se* violates the Constitution's ban on cruel and unusual punishments, it did recognize that the penalty of death is different in kind from any other punishment imposed under our system of criminal justice. Because of the uniqueness of the death penalty, *Furman* held that it could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner. Mr. Justice White concluded that 'the death penalty is exacted with great infrequency even for the most atrocious crimes and . . . there is no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not.' 408 U.S., at 313, 92 S.Ct., at 2764. Indeed, the death sentences examined by the Court in *Furman* were 'cruel and unusual in the same way that being struck by lightening is cruel and unusual. For, of all the people convicted of [capital crimes], many just as reprehensible as these, the petitioners [in *Furman* were] among a capriciously selected random handful upon whom the sentence of death has in fact been imposed. . . . [T]he Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed.' *Id.*, at 309–310, 92 S.Ct., at 2762 (Stewart, J., concurring).

"*Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." (96 S.Ct. at 2932)

\* \* \* \* \* \*

"In summary, the concerns expressed in *Furman* that the penalty of death not

*Ohio,* —— U.S. ——, 98 S.Ct. 2954, 2961, 57 L.Ed.2d 973 (1978).

be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance. As a general proposition these concerns are best met by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information." (96 S.Ct. at 2935)

"The basic concern of *Furman* centered on those defendants who were being condemned to death capriciously and arbitrarily. Under the procedures before the Court in that case, sentencing authorities were not directed to give attention to the nature or circumstances of the crime committed or to the character or record of the defendant. Left unguided, juries imposed the death sentence in a way that could only be called freakish. The new Georgia sentencing procedures, by contrast, focus the jury's attention on the particularized nature of the crime and the particularized characteristics of the individual defendant. While the jury is permitted to consider any aggravating or mitigating circumstances, it must find and identify at least one statutory aggravating factor before it may impose a penalty of death. In this way the jury's discretion is channeled. No longer can a jury wantonly and freakishly impose the death sentence; it is always circumscribed by the legislative guidelines. In

addition, the review function of the Supreme Court of Georgia affords additional assurance that the concerns that prompted our decision in *Furman* are not present to any significant degree in the Georgia procedure applied here.

"For the reasons expressed in this opinion, we hold that the statutory system under which Gregg was sentenced to death does not violate the Constitution. * * *." (96 S.Ct. at 2941)

### IV.

An outline of the Statute here under constitutional challenge will also be helpful to an understanding of the problems presented and the solutions reached:

Delaware retains the death penalty only for murder in the first degree.[3] The defendant's guilt or innocence is determined either by a jury or judge in the first stage of a bifurcated trial. Upon conviction of guilt, a separate hearing is conducted to determine whether the defendant should be sentenced to death or to life imprisonment without benefit of probation or parole. The second stage of the bifurcated trial is conducted before the jury or judge who made the determination of guilt. § 4209(b). The procedure at such "punishment hearing" is essentially the same in both trial by jury and trial by Court. § 4209(c). At the hearing, "evidence may be presented as to any matter that the Court deems relevant and admissible to the penalty to be imposed"; the "evidence shall include matters relating

---

**3.** 11 *Del.C.* § 636 provides:

"§ 636. Murder in the first degree; class A felony.

"(a) A person is guilty of murder in the first degree when:

"(1) He intentionally causes the death of another person;

"(2) In the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, he recklessly causes the death of another person;

"(3) He intentionally causes another person to commit suicide by force or duress;

"(4) He recklessly causes the death of a law-enforcement officer, corrections employee or fireman while such officer is in the lawful performance of his duties;

"(5) He causes the death of another person by the use of or detonation of any bomb or similar destructive device;

"(6) He, with criminal negligence, causes the death of another person in the course of and in furtherance of the commission or attempted commission of rape, kidnapping, arson in the first degree, robbery in the first degree, or immediate flight therefrom;

"(7) He causes the death of another person in order to avoid or prevent the lawful arrest of any person, or in the course of and in furtherance of the commission or attempted commission of escape in the second degree or escape after conviction.

"(b) Murder in the first degree is a class A felony and shall be punished as provided in § 4209 of this title."

to any mitigating circumstance and to any aggravating circumstance, including, but not limited to, those aggravating circumstances enumerated in" § 4209(e). Advanced notice in writing of any aggravating circumstances and any mitigating circumstances expected to be adduced by the other side is required. In the instructions to the jury, the Trial Court shall include instructions that any mitigating or aggravating circumstance must be weighed and considered; and the "jury shall be instructed to weigh any mitigating factors against the aggravating factors."

In determination of the sentence [§ 4209(d)], a sentence of death may not be imposed unless the jury (or judge in a non-jury case) unanimously finds beyond a reasonable doubt at least one of the statutory aggravating circumstances specified by § 4209(e). The death sentence must be unanimously recommended "after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender". A finding by the jury of a statutory aggravating circumstance and a consequent recommendation of death, supported by the evidence, is binding on the Court. § 4209(d).

In addition to the usual appellate review available in criminal cases, provision is made by § 4209(g) for an automatic appeal and review by this Court of any "recommendation on and imposition of" a death penalty.[4] In so doing, this Court is directed to determine whether "considering the totality of the evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender, the death penalty was either arbitrarily or capriciously imposed or recommended, or disproportionate to the penalty recommended or imposed in similar cases arising under this section."; and this Court must determine whether "the evidence sup-

ports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in" § 4209(e) or § 636(a)(2)–(7). In reviewing a death sentence, this Court may affirm; remand with instructions to reinstate the jury's recommendation of death sentence and impose the death penalty, if the trial judge erroneously rejected the jury's recommendation; or set the death sentence aside and remand for correction of any errors occurring during the punishment hearing and for imposition of the appropriate penalty. This Court is required to "set forth its findings as to the reasons for its action".

To enable this Court to perform such new, automatic review responsibilities in connection with the death penalty, this Court is furnished by the Statute with the following limited data: The clerk of the Superior Court "shall require a complete transcript of the punishment hearing to be prepared promptly" and sent to this Court, together with a notice prepared by the clerk setting forth "the title and docket number of the case, the name of the defendant, the name and address of any attorney and a narrative statement of the judgment, the offense and the punishment prescribed". Subsection (g)(1). This is the limit of the assistance provided by the Statute to this Court for its performance of the new jurisdictional duties requiring final determination of the life-and-death issues involved.[5]

## V.

*As to Certified Question No. 1:*

■ We hold that the Statute meets constitutional requirements in that it allows consideration of particularized mitigating circumstances as required by *Woodson* and related cases—and especially as required by the recent decision of the U.S. Supreme Court in *Lockett v. Ohio,* —— U.S. ——, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

---

**4.** Any error in the guilt phase of the trial is reviewable under the ordinary appellate procedures and is in addition to the automatic review of the death penalty provided by the Statute.

**5.** Compare the analogous provisions of the Georgia Statute, *infra.*

The defendants and the State seem to be in agreement that because the Statute permits the sentencing authority to consider any and all mitigating circumstances, it meets constitutional standards in this respect. To that extent, this problem is simplified.

But, additionally, the U.S. Supreme Court recently decided *Lockett* involving the profound significance of mitigating factors in the imposition of the death penalty. We examine our Statute in the light of that case.

In striking down Ohio's death penalty statute in *Lockett* because it allowed consideration of only 3 mitigating factors, the U.S. Supreme Court reaffirmed the holding of *Woodson* and *Gregg* that the Constitution requires individualized consideration both of the crime and of the character of the defendant in the imposition of the death sentence. The Court there held that, in all but the rarest kind of capital case, the sentencing authority should be allowed to consider as a mitigating factor "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death". 98 S.Ct. at 2965.

It is manifest that the Delaware Statute satisfies that constitutional mandate. Subsection (c)(1) provides that the defendant may present evidence "relating to *any* mitigating circumstance"; subsection (c)(4) provides that jury instructions shall include directions "to weigh and consider *any* mitigating circumstances".; subsection (d)(1)(b) requires the jury to weigh "*all relevant evidence * * * in mitigation* which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender."; and subsection (g)(2)(a) requires that, on appellate review of the death sentence, this Court shall consider "the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender."

Clearly, therefore, the mitigating circumstance facet of our Statute meets the constitutional standards laid down in *Lockett* and its progenitors.

## VI.

*As to Certified Question No. II:*

■ We hold constitutional the provision of subsection (c)(1) of the Statute, permitting the sentencing authority to receive evidence of "any aggravating circumstance, including, but not limited to, those aggravating circumstances enumerated in subsection (e)" of the Statute.

According to the defendants, the discretion of the jury in imposing the death penalty is not sufficiently directed and limited under the Statute because the Statute allows the sentencing authority to consider any and all aggravating circumstances; they contend that this could improperly influence the decision to recommend the death penalty since the sentencing authority is not required by our Statute to identify and specify the statutory aggravating circumstance it "finds" under subsection (d)(1)(a) as the basis for the recommendation of the imposition of death.

■ The *Furman* decision held that in order to minimize the risk that the death penalty would be imposed capriciously, the decision to impose it had to be channeled by statutory standards so that the sentencing authority would be obliged to focus on the particularized circumstances of the crime and of the defendant. Requiring the sentencing authority to find and identify at least one *statutory* aggravating circumstance before being empowered to recommend a death sentence is an essential element of constitutional death penalty procedures under the law, as now clearly prescribed. But, in so doing, there is no proscription against consideration of aggravating circumstances other than those listed in the Statute.

The Delaware Statute permits *consideration* of *any* aggravating factors—but it requires at least *one statutory* aggravating factor to be *found* by the sentencing authority as a condition for imposing the death penalty. There is no constitutional

defect in the statutory procedure of allowing consideration of other aggravating circumstances; such procedure contributes to attention to all specific circumstances of the crime and the defendant. The important factor is that in the exercise of its discretion, the sentencing authority is strictly circumscribed and limited to a statutory aggravating circumstance to prevent arbitrary and capricious imposition of the death penalty. Indeed, the U.S. Supreme Court has found no fault in permitting the consideration of aggravating circumstances other than the statutory ones. In approving the Georgia death penalty Statute, the Supreme Court stated in *Gregg*:

"While the jury is permitted to consider any aggravating or mitigating circumstances, it must find and identify at least one statutory aggravating factor before it may impose a penalty of death. In this way the jury's discretion is channeled. No longer can a jury wantonly and freakishly impose the death sentence; it is always circumscribed by the legislative guidelines." (96 S.Ct. at 2941).

\* \* \* \* \* \*

A more serious problem is presented by the argument that the sentencing authority

is not expressly required by our Statute to identify and specify the statutory aggravating circumstance found and upon which it has based the death penalty; the trier of fact is only required to "find" beyond a reasonable doubt at least one statutory aggravating circumstance [subsection (d)(1)(a)]; there is no requirement that the aggravating circumstance thus "found" be expressly identified.

■ It is undisputed that *Gregg* requires the sentencing authority to identify and specify the statutory aggravating circumstance found as a basis for recommending the imposition of death.[6] The rationale is that requiring a specific finding channels the discretion of the jury and allows the appellate court to review the sentence, based upon the specified ground, to determine if the jury was properly guided by the evidence in its decision to impose the death penalty. As the Court stated in *Gregg*:

"Where the sentencing authority is required to specify the factors it relied upon in reaching its decision, the further safeguard of meaningful appellate review is available to insure that death sentences are not imposed capriciously or in a freakish manner." (96 S.Ct. at 2935).

---

6. E. g., in *Gregg*: "In the event that the jury does impose the death penalty, it must designate in writing the aggravating circumstance which it found to exist beyond a reasonable doubt." (96 S.Ct. at 2943).

Specificity of aggravating circumstance is also required by the Texas Statute approved in *Jurek*:

"That procedure requires the jury to answer three questions in a proceeding that takes place subsequent to the return of a verdict finding a person guilty of one of the above categories of murder. The questions the jury must answer are these:

"(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

"(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

"(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased." Art. 37.071(b) (Supp.1975–1976).

"If the jury finds that the State has proved beyond a reasonable doubt that the answer to each of the three questions is yes, then the death sentence is imposed. If the jury finds that the answer to any question is no, then a sentence of life imprisonment results.

\* \* \* \* \* \*

"While Texas has not adopted a list of statutory aggravating circumstances the existence of which can justify the imposition of the death penalty as have Georgia and Florida, its action in narrowing the categories of murders for which a death sentence may ever be imposed serves much the same purpose. \* \* \* In fact, each of the five classes of murders made capital by the Texas statute is encompassed in Georgia and Florida by one or more of their statutory aggravating circumstances. For example, the Texas statute requires the jury at the guilt-determining stage to consider whether the crime was committed in the course of a particular felony, whether it was committed for hire, or whether the defendant was an inmate of a penal institution at the time of its commission. \* \* \* " (96 S.Ct. at 2955).

██ In view of the known evolution and purpose of subsection (d)(1)(a), and the context of the language used therein, it is only reasonable to assume that the General Assembly intended to require that the "finding" beyond a reasonable doubt of at least one aggravating circumstance included the requirement that the circumstance thus "found" be identified and announced specifically on the record as such. We so hold.[7] It would be wholly unreasonable to assume a contrary legislative intent. The appellate review, required by subsection (g)(2)(b), [determination of whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance] becomes innocuous without such identification and specification.

With this construction of the word "find" in subsection (d)(1)(a), the defendants' position falls. Accordingly, we conclude that subsection (c) is not unconstitutionally broad and vague for the reasons asserted here.

## VII.

*As to Certified Question No. III:*

██ We hold that the statutory aggravating circumstances described solely as the victim being "elderly" or "defenseless" [subsection (e)(1)(r) and (s)][8] are unconstitutionally vague, but severable.

The finding of either of these aggravating circumstances beyond a reasonable doubt could form the basis of a death penalty under our Statute. But what, precisely, do the terms "elderly" and "defenseless" mean within the context of this Statute?

As has been demonstrated by *Gregg, Proffitt,* and *Jurek,* the constitutionality of a death penalty statute rests upon the premise that the sentencing authority's discretion in imposing the death penalty is guided and channeled by clear and objective statutory standards. The defendants assert that the aggravating circumstances which are designated in our Statute simply as "elderly" and "defenseless" victims, without further definition, are unconstitutionally broad and vague; that those aggravating circumstances do not provide adequate guidelines to channel the discretion of the sentencing authority sufficiently to constitute the clear and objective statutory standard mandated by *Gregg* and its companion cases. We agree.

The problem and the answer were well stated by the Supreme Court of Georgia in ruling an aggravating circumstance in its death penalty statute as being unconstitutionally vague in *Arnold v. State,* Ga.Supr., 236 Ga. 534, 224 S.E.2d 386, 391 (1976):

"Whenever a statute leaves too much room for personal whim and subjective decision-making without a readily ascertainable standard or minimal, objective guidelines for its application, it cannot withstand constitutional scrutiny."

We have no indication of legislative intent in the usage of the words "elderly" and "defenseless". When is one "elderly"? When is one "defenseless"? There is nothing in the context of the Statute to assist in a construction of the terms; there are no prior Delaware judicial interpretations. It cannot be said that the words have a common and ordinary meaning sufficiently definite to meet their usage in the context of the Statute. Definitions from cases of other jurisdictions and in other contexts are of little help: e. g., "Elderly means somewhat old, advanced beyond middleage; bordering on old age." *State v. Broadnax,* N.C.Supr., 61 N.C. 41, 45 (1866). A modern dictionary definition adds little: "Elderly: somewhat old; rather advanced in years; past middle age." *Webster's Third International Dictionary of the English Language Unabridged* (1971).

Similarly, what is the precise meaning of the term "defenseless" within the context of the subsection? There is no legislative definition. We find no apposite judicial

---

7. This conclusion is strongly supported by the reference in subsection (d)(1)(b) to the "submission" to the court of the finding of at least one statutory aggravating circumstance.

8. Formerly designated (e)(18), (19).

definition. And, again, dictionary definitions [9] are of no help in the consideration of a factor upon the basis of which life or death may directly depend.

Manifestly, words such as "elderly" and "defenseless," without legislative definition of scope and meaning, are susceptible of widely differing interpretations. Thus, by the use of such vague terminology, there is substantial risk that sentencing authorities will inflict the death penalty in an arbitrary and diversified manner. Such vague terms have particular constitutional shortcomings, and are particularly unacceptable, when they are applied to the imposition of the death penalty.

█ At the risk of objectionable repetition, the crux of the matter is this: The cornerstone of the Eighth and Fourteenth Amendment guarantee against cruel and unusual punishment is that the death penalty not be imposed in a "freakish and wanton" or arbitrary and capricious manner. It is essential that the jury, or judge where applicable, must be provided by the Statute with clear and objective standards such that their discretion may not be misguided.

In *Arnold*, the Georgia Supreme Court ruled that "a substantial history of serious assaultive criminal convictions", which the Georgia statute specified as an aggravating circumstance, was unconstitutionally vague. In discussing the vagueness doctrine, the Court noted:

> "This doctrine has particular application to death penalty statutes after *Furman v. Georgia*, supra, where, if anything is made clear, it is that a wide latitude of discretion in a jury as to whether or not to impose the death penalty is unconstitutional". (224 S.E.2d at 391).

And in *Gregg*, the United States Supreme Court noted this:

> "A system could have standards so vague that they would fail adequately to channel the sentencing decision patterns of juries with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in *Furman* could occur." (96 S.Ct. at 2935, fn. 46).

For these reasons, insofar as the vague "elderly" and "defenseless" victim provisions of subsections (e)(1)(r) and (s) are concerned, the Statute does not sufficiently guide and channel the discretion of the sentencing authority and, consequently, violates the constitutional guarantee against cruel and unusual punishment.

\*　\*　\*　\*　\*　\*

█ While, therefore, the "elderly" and "defenseless" victim provisions of subsection (e)(1)(r) and (s) must fall as aggravating circumstances upon the basis of which a death sentence may be imposed, these unconstitutional provisions are severable. The express legislative intent in the Statute governs the issue of severability.[10] *State v. Ayers*, Del.Supr., 260 A.2d 162 (1969). Therefore, the invalidity of the "elderly" and "defenseless" victim provisions will not affect the validity of any other provision of the Statute. See *State v. Spence*, Del. Supr., 367 A.2d 983 (1976); *Fuentes v. State*, Del.Supr., 349 A.2d 1 (1975); *State v. Dickerson*, Del.Supr., 298 A.2d 761 (1972).

## VIII.

*As to Question No. IV:*

Since we find the Statute to be constitutional, we do not reach the question of the proper penalty to be imposed for first degree murder in the event of the unconstitutionality of the Statute.

---

**9.** "Defenseless" is defined as "being without defense, helpless against attack." *Webster's Third New International Dictionary of the English Language* (1971).

**10.** 61 *Del.L.*, c. 41, § 3 provides:
"In any provision of this act or the application thereof to any person or circumstance, including any one or more of the enumerated instances which constitute first degree murder is held unconstitutional or otherwise invalid, such unconstitutionality or invalidity shall not affect any other provision or application of this act, and to that end the provisions of this act are declared to be severable."

## IX.

*As to Certified Question No. V:*

We hold that the Statute provides a constitutionally adequate and meaningful appellate review of the death penalty, if implemented as stated below.

 The constitutionality of death penalty legislation under the most recent pronouncements of the United States Supreme Court depends not only upon clearly defined statutory guidelines as safeguards against "freakish" sentences by unguided sentencing authorities, but also upon an automatic appellate review of every death sentence as an additional safeguard against arbitrary and capricious action in the imposition and execution of death sentences.

In *Gregg*, the U.S. Supreme Court noted the function of appellate review in death penalty cases as follows:

"The provision for appellate review in the Georgia capital-sentencing system serves as a check against the random or arbitrary imposition of the death penalty. In particular, the proportionality review substantially eliminates the possibility that a person will be sentenced to die by the action of any aberrant jury. If a time comes when juries generally do not impose the death sentence in a certain kind of murder case, the appellant review procedures assure that no defendant convicted under such circumstances will suffer a sentence of death." (96 S.Ct. at 2940).

Also in *Gregg* it is stated:

"In short, Georgia's new sentencing procedures require as a prerequisite to the imposition of the death penalty, specific jury findings as to the circumstances of the crime or the character of the defendant. Moreover, to guard further against a situation comparable to that presented in *Furman*, the Supreme Court of Georgia compares each death sentence with the sentences imposed on similarly situated defendants to ensure that the sentence of death in a particular case is not disproportionate. On their face these procedures seem to satisfy the concerns of *Furman*. No longer should there be 'no meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not.' 408 U.S., at 313, 92 S.Ct., at 2764 (White, J., concurring)." (96 S.Ct. at 2937)

And as further model and guideline of the role of the State Supreme Court and the nature and scope of the appellate review of each death sentence contemplated in *Gregg* and adopted by the Delaware General Assembly in following the Georgia Statute as closely as it did, we have the following illustrative summary from *Gregg*:

"In considering any given death sentence on appeal the Georgia Supreme Court is to determine whether the sentence imposed was consistent with the relevant statutes—i. e., whether there was sufficient evidence to support the finding of an aggravating circumstance. * * * However it must do much more than determine whether the penalty was lawfully imposed. It must go on to decide—after reviewing the penalties imposed in 'similar cases'—whether the penalty is 'excessive or disproportionate' considering both the crime and the defendant. * * * The new Assistant to the Supreme Court is to assist the court in collecting the records of 'all capital felony cases' in the State of Georgia in which sentence was imposed after January 1, 1970. * * * The Court also has the obligation of determining whether the penalty was 'imposed under the influence of passion, prejudice or any other arbitrary factor.' * * * The Georgia Supreme Court has interpreted the appellate review statute to require it to set aside the death sentence whenever juries across the State impose it only rarely for the type of crime in question; but to require it to affirm death sentences whenever juries across the State generally impose it for the crime in question. Thus in this case the Georgia Supreme Court concluded that the death penalty was so rarely imposed for the crime of

robbery that it set aside the sentences on the robbery counts and effectively foreclosed that penalty from being imposed for that crime in the future under the legislative scheme now in existence. Similarly the Georgia Supreme Court has determined that juries impose the death sentence too rarely with respect to certain classes of rape. Compare *Coley v. State*, 231 Ga. 829, 204 S.E.2d 612 (1974) with *Coker v. State*, 234 Ga. 555, 216 S.E.2d 782 (1975). However it concluded that juries 'generally throughout the state' have imposed the death penalty for those who murder witnesses to armed robberies. *Jarrell v. State*, 234 Ga. 410, 425, 216 S.E.2d 258, 270 (1975). Consequently it affirmed the sentences in this case on the murder counts. If the Georgia Supreme Court is correct with respect to this factual judgment imposition of the death penalty in this and similar cases is consistent with *Furman*. Indeed, if the Georgia Supreme Court properly performs the task assigned to it under the Georgia statutes, death sentences imposed for discriminatory reasons or wantonly or freakishly for any given category of crime will be set aside." (96 S.Ct. at 2948–9).

Similarly, in *Proffitt*, in which the Florida Death Penalty Statute was approved by the United States Supreme Court, it was noted that the Supreme Court of Florida, like that of Georgia, had not hesitated to vacate a death sentence when it had determined that the sentence should not have been imposed; indeed, it had vacated 8 of the 21 death sentences that it had reviewed to the date of *Proffitt*. And it was noted that "such review is to ensure that they [death sentences] are consistent with other sentences imposed in similar circumstances." (96 S.Ct. at 2967).[11]

In this area, the defendants contrast the Delaware Statute with the appellate review provisions of the Georgia,[12] Florida, and

---

11. Notwithstanding Florida's procedure for appellate review of each death sentence "to ensure that similar results are reached in similar cases," the petitioner attacked the appellate review process as being "necessarily subjective and unpredictable". In response, the following appears in *Proffitt*, affording us still another guideline as to the essentiality of an adequate appellate review of each death sentence if our Death Penalty Statute is to meet present constitutional standards:

"While it may be true that that [Florida Supreme] court has not chosen to formulate a rigid objective test as its standard of review for all cases, it does not follow that the appellate review process is ineffective or arbitrary. In fact, it is apparent that the Florida court has undertaken responsibly to perform its function of death sentence review with a maximum of rationality and consistency. For example, it has several times compared the circumstances of a case under review with those of previous cases in which it has assessed the imposition of death sentences. See, e. g., *Alford v. State*, 307 So.2d, at 445; *Alvord v. State*, 322 So.2d, at 540–41. By following this procedure the Florida court has in effect adopted the type of proportionality review mandated by the Georgia statute. Cf. *Gregg v. Georgia*, 428 U.S., at 204–206, 96 S.Ct., at 2939–2941. And any suggestion that the Florida court engages in only cursory or rubber-stamp review of death penalty cases is totally controverted by the fact that it has vacated over one-third of the death

sentences that have come before it." [96 S.Ct. at 2969]

12. Compare the Georgia Statute which provides:

"27–2537 Review of death sentences

"(a) Whenever the death penalty is imposed, and upon the judgment becoming final in the trial court, the sentence shall be reviewed on the record by the Supreme Court of Georgia. The clerk of the trial court, within 10 days after receiving the transcript, shall transmit the entire record and transcript to the Supreme Court of Georgia together with a notice prepared by the clerk and a report prepared by the trial judge. The notice shall set forth the title and docket number of the case, the name of the defendant and the name and address of his attorney, a narrative statement of the judgment, the offense, and the punishment prescribed. The report shall be in the form of a standard questionnaire prepared and supplied by the Supreme Court of Georgia.

\* \* \* \* \* \*

"(f) There shall be an Assistant to the Supreme Court, who shall be an attorney appointed by the Chief Justice of Georgia and who shall serve at the pleasure of the court. The court shall accumulate the records of all capital felony cases in which sentence was imposed after January 1, 1970, or such earlier date as the court may deem appropriate. The Assistant shall provide the court with whatever extracted information it desires with respect thereto, including but not limited to a synopsis

Texas Statutes approved in *Gregg, Proffitt,* and *Jurek* ; and, contending that the appellate review provided by the Delaware Statute does not furnish the meaningful safeguards which are necessary to avoid arbitrary and capricious imposition of death penalties, the defendants attack the constitutionality of the Delaware Statute upon the following specific grounds:

(1) The defendants contends that the Delaware Statute [subsection (g)(1)] requires only that a "complete transcript of the punishment hearing" be prepared and transmitted to the Supreme Court; it does not require the transcript of the entire trial record needed by the Court to fulfill the statutory function [subsection (g)(2)] of considering "the totality of the evidence" in its review of the "particular circumstances or details of the offense and the character and propensities of the offender" in its review of the death penalty.

(2) The defendants contend that the Delaware Statute does not require, as does the Georgia Statute, that the Supreme Court be furnished a report of data and findings by the Trial Judge for the Supreme Court's assistance in reviewing the sentence of death for arbitrariness and disproportionality.[13]

(3) The defendants contend that, although the Delaware Statute [subsections (d) and (e)] requires that a death sentence may be imposed only when the trier of fact, "finds" beyond a reasonable doubt "at least 1 statutory aggravating circumstance", there is no requirement anywhere in the Statute that the aggravating circumstance thus "found" be specifically identified, by special verdict or otherwise, for appellate scrutiny of whether "the evidence supports the \* \* \* finding of a statutory aggravating circumstance" [subsection (g)(2)(b)]. For discussion of this problem, see Part II *supra.*

(4) It is contended that the Delaware Statute does not provide to this Court the administrative assistance necessary for the performance of the comparative analysis function of determining whether the death penalty in the case under review is "disproportionate to the penalty recommended or imposed in similar cases arising under this section." [subsection (g)(2)(a)].[14]

There is much merit in the foregoing contentions. The constitutional role which the Delaware Supreme Court has in safeguarding against arbitrary, capricious, "freakish or wanton" death sentences is substantially as that vested in the Georgia Supreme Court and approved in *Gregg.*

▮▮▮ When viewed in the light of the broad scope of review of each death sentence, for arbitrariness and disproportionality, which automatically becomes the responsibility of this Court under the Statute [subsection (g)], it is manifest that the defendants point out deficiencies in the Statute which must be remedied in order to

---

or brief of the facts in the record concerning the crime and the defendant.

"(g) The court shall be authorized to employ an appropriate staff and such methods to compile such data as are deemed by the Chief Justice to be appropriate and relevant to the statutory questions concerning the validity of the sentence.

"(h) The office of the Assistant shall be attached to the office of the Clerk of the Supreme Court of Georgia for administrative purposes."

13. By the implementing Rule promulgated by the Georgia Supreme Court, pursuant to its Statute, the report prepared by the trial judge: " \* \* \* is in the form of a six and one-half page questionnaire, designed to elicit information about the defendant, the crime, and the circumstances of the trial. It requires the trial judge to characterize the trial in several ways designed to test for arbitrariness and dispro-

portionality of sentence. Included in the report are responses to detailed questions concerning the quality of the defendant's representation, whether race played a role in the trial, and, whether, in the trial court's judgment, there was any doubt about the defendant's guilt or the appropriateness of the sentence. A copy of the report is served upon defense counsel." (96 S.Ct. at 2922)

14. Compare Georgia Statute § 27–2537(f), *supra,* requiring that the Supreme Court shall "accumulate the records of all capital felony cases in which sentence was imposed after January 1, 1970, or such earlier date as the court may deem appropriate"; and see Georgia Statute *supra* § 27–2537(f) and (g) authorizing such administrative assistance for the Court as may be needed for this purpose.

enable this Court to meet the constitutional mandate of reviewing every death sentence for arbitrariness and disproportionality.

But, in our opinion, the stated inadequacies do not rise to the level of constitutional proportions. No decision of the U.S. Supreme Court has come to our attention so holding. The deficiencies noted are procedural and, in our opinion, may be remedied by requirements imposed by this Court to conform with the appellate procedures approved in *Gregg*.

██ The constitutionality of the Statute as to appellate review may be assured, in our opinion, upon the bases of the following procedural requirements which we hereby impose, under our constitutional authority (*Del.Const.*, Art. IV, § 13), upon any appeal to this Court for review of a death penalty under subsection (g) of the Statute:

(1) A complete transcript of the trial must accompany transmittal of the transcript of the punishment hearing under § (g)(1) of the Statute. In this connection we correlate Supreme Court Rule 9(e)(1) [15] and construe it to require a complete trial transcript whenever a death penalty has been imposed. The importance of a full trial transcript for each appellate review of a death penalty was recently pointed-up by Chief Justice Burger in *Lockett*:

"* * * we conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." —— U.S. at ——, 98 S.Ct. at 2965.

(2) An essential part of the record and of the report by the Trial Judge shall be a specific identification of the statutory aggravating circumstance or circumstances "found" by the trier of fact, upon the basis of which the death sentence was imposed under subsection (d)(1)(a) and as to which, on appellate review, this Court must find supporting evidence, under subsection (g)(2)(b), in order to affirm the sentence of death.

(3) A report by the sentencing Trial Judge, in the form attached hereto as Appendix B, shall accompany the record transmitted to the Supreme Court by the clerk of the Superior Court under subsection (g)(1).*

██ (4) Counsel for the State, together with *amicus curiae* and such other person as may be appointed by the Court, at State expense, for each death penalty reviewed under subsection (g)(1),** shall furnish to

---

15. Supr.Ct.Rule 9(e)(1) provides:

"(e) Transcript. The following directions shall apply to each appeal unless otherwise ordered by the Court:

"(i) In any criminal case in which the trier of fact returns a verdict of guilty of a Class A felony or of any crime for which a mandatory sentence of imprisonment of a minimum of at least 3 years is required by law, the judge of the trial court shall forthwith enter an order directing the preparation of the transcript of such portions of the proceedings as the trial court shall determine to be relevant for purpose of an appeal. The judge of the trial court shall also designate the party or parties responsible for payment of the costs of such transcript;"

* In order to broaden the base of the comparative analysis in the appellate review of each death sentence, the sentencing Trial Judge is hereby required to file a report, in the form attached hereto as Appendix B (insofar as may be appropriate), as part of the record of each case in which there was an indictment for murder in

the first degree and (a) a guilty plea to a lesser included offense was taken; or (b) the charge was reduced for the purpose of trial; or (c) the death penalty was not imposed after trial on the charge of first degree murder.

** The comparative analysis of each death sentence, underlying the statutory test of "disproportionality", requires an unbiased and unprejudiced comparison. Basically, it is a court duty in the performance of which counsel in the case may be helpful; but, in the final analysis, it is the type of duty which will require impartial assistance such as *amicus curiae* or other special assistant employed by the Court. The data which the Court is mandated by the Statute to accumulate and consider may not be left only to adversaries to submit.

The following samples demonstrate the manner in which the Georgia Supreme Court reports its appellate process in this respect:

In *Ward v. State*, Ga.Supr., 239 Ga. 205, 236 S.E.2d 365, 368 (1977):

"The second of these two inquiries is to determine whether the sentence is 'excessive or

this Court such assistance as this Court may require in order to fulfill the statutory comparative analysis underlying the requirement that the appellate review include a determination of whether the death penalty imposed in the case under review "was either arbitrarily or capriciously imposed or recommended, or disproportionate to the penalty recommended or imposed in similar cases arising under this section". See subsection (g)(2)(a). See the quotations from *Gregg* and *Proffitt* (pp. 19, 20, and 21 *supra*) explaining the constitutional necessity of such comparative analysis of each death sentence to assure avoidance of the "freakish and wanton" sentence which is the basic evil so constitutionally repugnant.

\* \* \* \* \* \*

■ Supplemented by the foregoing requirements, hereby imposed by this Court as essential procedural implementation of the appellate review approved by the U.S. Supreme Court in *Gregg* and its companion cases and prescribed by the Statute, we hold that the Statute provides a constitutionally adequate and meaningful appellate review of a death penalty.

X.

*As to Certified Question No. VI:*

■ We hold that the Statute is not violative of the Fifth and Fourteenth Amendment or of Del.Const. Art. I, § 7, for the reason argued by the defendants: that "it fails to provide punishment for persons convicted of first degree murder when the jury (or judge where appropriate) can find a statutory aggravating circumstance beyond a reasonable doubt but fails to recommend death or vice versa."

The defendants contend that the Statute fails to provide punishment for all persons convicted of murder in the first degree because subsection (d) provides that if the jury or judge either (1) finds a statutory aggravating circumstance but cannot recommend death, or (2) recommends death but cannot find an aggravating circumstance, neither life imprisonment nor death can be imposed; and, the contention continues, such result, is arbitrary and capricious, and thus cruel, unusual, and unconstitutional.

We find this argument of the defendants to be frivolous. The Statute clearly provides punishment for all convicted of mur-

disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.' \* \* \* To affirm the death penalty we must find that the death penalty is not disproportionate to the penalty imposed in similar cases. That is impossible here because we have an identical case involving the same defendant in which the death penalty was not imposed. The same defendant was tried previously on the same charges and the jury imposed a life sentence. Therefore the death sentence in the case under review is obviously disproportionate to the life sentence previously imposed against the same defendant in the same case. Accordingly, the law requires us to vacate the death sentence and direct the imposition of a life sentence. See generally *Gregg v. State, supra* (sentence of death reversed in armed robbery case for disproportionateness); *Coley v. State, supra* (sentence of death reversed in rape case for disproportionateness). To do otherwise would be incongruous and contrary to the clear mandate of the law. For as was said by the United States Supreme Court in *Gregg*, '[t]he provision for appellate review in the Georgia capital-sentencing system serves as a check against the random or arbitrary imposition of the death penalty. In particular, the proportionality review substan-

tially eliminates the possibility that a person will be sentenced to die by action of an aberrant jury.' *Gregg, supra*, 428 U.S. at 206, 96 S.Ct. at 2940."

And in *Bowden v. State*, Ga.Supr., 239 Ga. 821, 238 S.E.2d 905, 911 (1977):

"In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed, and we find the similar cases listed in the Appendix support affirmance of the death penalty.

"Judgment affirmed.

"All the Justices concur.

"APPENDIX

"*Moore v. State*, 233 Ga. 861, 213 S.E.2d 829 (1974); *Floyd v. State*, 233 Ga. 280, 210 S.E.2d 810 (1974); *Berryhill v. State*, 235 Ga. 549, 221 S.E.2d 185 (1975); *Coleman v. State*, 237 Ga. 84, 226 S.E.2d 911 (1976); *Birt v. State*, 236 Ga. 815, 225 S.E.2d 248 (1976); *Gibson v. State*, 236 Ga. 874, 226 S.E.2d 63 (1976); *Isaacs v. State*, 237 Ga. 105, 226 S.E.2d 922 (1976); *Dungee v. State*, 237 Ga. 218, 227 S.E.2d 746 (1976); *Pryor v. State*, 238 Ga. 698, 234 S.E.2d 918 (1977); *Gaddis v. State*, 239 Ga. 238, 236 S.E.2d 594 (1977); *Young v. State*, 239 Ga. 53, 236 S.E.2d 1 (1977)."

der in the first degree. Subsection (a) provides that any person convicted of first degree murder shall be punished by death or life imprisonment without benefit of probation or parole. Subsection (d)(1) provides that death shall not be imposed unless there is a finding beyond reasonable doubt of a statutory aggravating circumstance plus a unanimous recommendation that death be imposed. Subsection (d)(3) provides that if the sentencing authority cannot find a statutory aggravating circumstance and cannot recommend death, a life sentence shall be imposed without benefit of probation or parole. Read as a whole, the Statute makes it crystal clear that unless both a statutory aggravating circumstance is found *and* a recommendation of death made, the punishment to be imposed is a life sentence without probation or parole; that if only one of the two conditions is met, the imposition of the death penalty is precluded and a sentence of life imprisonment without benefit of probation or parole is required.

## XI.

For the reasons stated, we hold that the 1977 Delaware Death Penalty Statute (11 *Del.C.* § 4209) is constitutional upon the questions certified, except for the aggravating circumstances identified as "elderly" and "defenseless" victims [subsections (e)(1)(r) and (s)], which provisions are declared unconstitutional and are severed from the Statute.

In summary, the responses to the certified questions are as follows:

Question No. I: Affirmative

Question No. II: Negative

Question No. III: Affirmative as to the "elderly" and "defenseless" witness provisions

Question No. IV: Academic

Question No. V: Negative

Question No. VI: Negative

## APPENDIX A

## CHAPTER 42. CLASSIFICATION OF OFFENSES; SENTENCES

Sec.
4209. Punishment, procedure for determining punishment, review of punishment and method of punishment for first degree murder.

Sec.
4214. Habitual criminal; life sentence.

### § 4209. Punishment, procedure for determining punishment, review of punishment and method of punishment for first degree murder.

(a) *Punishment for first degree murder.* — Any person who is convicted of first degree murder shall be punished by death or by imprisonment for the remainder of his or her natural life without benefit of probation or parole or any other reduction, said penalty to be determined in accordance with this section.

(b) *Separate hearing on issue of punishment for first degree murder.* — (1) Upon a conviction of guilt of a defendant of first degree murder, the Superior Court shall conduct a separate hearing to determine whether the defendant should be sentenced to death or to life imprisonment without benefit of probation or parole as authorized by subsection (a) of this section. If the defendant was convicted of first degree murder by a jury, this hearing shall be conducted by the trial judge before that jury as soon as practicable after the return of the verdict of guilty. Alternate jurors shall not be excused from the case prior to submission of the issue of guilt to the trial jury and shall remain separately sequestered until a verdict on guilt is entered. If the verdict of the trial jury is guilty of first degree murder said alternates shall sit as alternate jurors on the issue of punishment. If, for any reason satisfactory to the Court, any member of the trial jury is excused from participation in the hearing on punishment, the trial judge shall replace such juror or jurors with alternate juror or jurors. If a jury of 12 jurors cannot participate in the hearing a separate and new jury, plus alternates, shall be selected for the hearing in accordance with the applicable rules of the Superior Court and laws of Delaware, unless the defendant(s) and the State stipulate to the use of a lesser number of jurors.

(2) If the defendant was convicted of first degree murder by the Court, after a trial and waiver of a jury trial or after a plea of guilty or nolo contendere, the hearing shall be conducted by the trial judge before a jury, plus alternates, empaneled for that purpose and selected in accordance with the applicable rules of the Superior Court and laws of Delaware, unless said jury is waived by the State and the defendant in which case the hearing shall be conducted, if possible, by and before the trial judge who entered the finding of guilty or accepted the plea of guilt or nolo contendere.

(c) *Procedure at punishment hearing.* — (1) The sole determination for the jury or judge at the hearing provided for by this section shall be the penalty to be imposed upon the defendant for the conviction of first degree murder. At the hearing, evidence may be presented as to any matter that the Court deems relevant and admissible to the penalty to be imposed. The evidence shall include matters relating to any mitigating circumstance and to any aggravating circumstance, including, but not limited to, those aggravating circumstances enumerated in subsection (e) of this section. Notice in writing of any aggravating circumstances and any mitigating circumstances shall be given to the other side by the party seeking to introduce evidence of such circumstances prior to the punishment hearing, and after the verdict on guilt, unless in the discretion of the Court such advance notice is dispensed with as impracticable. The record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant or the absence of any such prior criminal convictions and pleas shall also be admissible in evidence.

(2) At the hearing the Court shall permit argument by the State, the defendant and/or his counsel, on the punishment to be imposed. Such argument shall consist of opening statements by each, unless waived, opening summation by the State, rebuttal summation by the defendant and/or his counsel and closing summation by the State.

(3) Upon the conclusion of the evidence and arguments the judge shall give the jury appropriate instructions and the jury shall retire to determine the punishment to be imposed.

(4) In the instructions to the jury the Court shall include instructions for it to weigh and consider any mitigating circumstances or aggravating circumstances and any of the statutory aggravating circumstances set forth in subsection (e) of this section which may be raised by the evidence. The jury shall be instructed to weigh any mitigating factors against the aggravating factors.

(d) *Determination of sentence.* — (1) A sentence of death shall not be imposed unless the jury or judge, where appropriate, finds:

a. Beyond a reasonable doubt at least 1 statutory aggravating circumstance; and

b. Unanimously recommends, after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed. Where the jury, or judge when applicable, submits such a finding and recommendation, the Court shall sentence the defendant to death as provided by subsection (f) of this section. A finding by the jury of a statutory aggravating circumstance, and a consequent recommendation of death, supported by the evidence, shall be binding on the Court.

(2) Refusal or failure of the Court to follow the jury's recommendation for any reason shall be appealable by the State as of right to the Supreme Court within 30 days after imposition of sentence.

(3) If the jury, or judge when applicable, cannot unanimously find that at least 1 statutory aggravating circumstance exists and cannot unanimously recommend death, the Court shall sentence the defendant to life imprisonment without benefit of probation or parole.

(e) *Aggravating circumstances.* — (1) In order for a sentence of death to be imposed, the jury, unanimously, or judge when applicable, must find that the evidence established beyond a reasonable doubt the existence of at least 1 of the following aggravating circumstances which shall apply with equal force to accomplices convicted of such murder:

a. The murder was committed by a person in, or who has escaped from, the custody of a law-enforcement officer or place of confinement.

b. The murder was committed for the purpose of avoiding or preventing an arrest or for the purpose of effecting an escape from custody.

c. The murder was committed against any law-enforcement officer, corrections employee or fireman, while such victim was engaged in the performance of his official duties.

d. The murder was committed against a judicial officer, a former judicial officer, Attorney General, former Attorney General, Assistant or Deputy Attorney General or former Assistant or Deputy Attorney General, State Detective or former State Detective, Special Investigator or former Special Investigator, during, or because of, the exercise of his official duty.

e. The murder was committed against a person who was held or otherwise detained as a shield or hostage.

f. The murder was committed against a person who was held or detained by the defendant for ransom or reward.

g. The murder was committed against a person who was a witness to a crime and who was killed for the purpose of preventing his appearance or testimony in any grand jury, criminal or civil proceeding involving such crime.

h. The defendant paid or was paid by another person or had agreed to pay or be paid by another person or had conspired to pay or be paid by another person for the killing of the victim.

i. The defendant was previously convicted of another murder or manslaughter or of a felony involving the use of, or threat of, force or violence upon another person.

j. The murder was committed while the defendant was engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any degree of rape, arson, kidnapping, robbery, sodomy or burglary.

k. The defendant's course of conduct resulted in the deaths of 2 or more persons where the deaths are a probable consequence of the defendant's conduct.

l. The murder was committed by means of torture, use of an explosive device or poison, or the defendant used such means on the victim prior to murdering him.

m. The defendant caused or directed another to commit murder or committed murder as an agent or employee of another person.

n. The murder was outrageously or wantonly vile, horrible or inhuman.

o. The defendant was under a sentence of life imprisonment, whether for natural life or otherwise, at the time of the commission of the murder.

p. The murder was committed for pecuniary gain.

q. The victim was pregnant.

r. The victim was severely handicapped, severely disabled or elderly.

s. The victim was defenseless.

(2) In any case where the defendant has been convicted of murder in the first degree in violation of any provision of § 636(a)(2)–(7) of this title, that conviction shall establish the existence of a statutory aggravating circumstance and the jury, or judge where appropriate, shall be so instructed. This provision shall not preclude the jury, or judge where applicable, from considering and finding the statutory aggravating circumstances listed in this subsection and any other aggravating circumstances established by the evidence.

(f) *Method and imposition of sentence of death.* — The imposition of a sentence of death shall be upon such terms and conditions as the trial court may impose in its sentence, including the place, the number of witnesses and conditions of privacy. Punishment of death shall, in all cases, be inflicted by hanging by the neck and such sentence may not be carried out until final review thereof is had by the Delaware Supreme Court as provided for in subsection (g) of this section. The Court or the Governor may suspend the execution of the sentence until a later date to be specified, solely to permit completion of the process of judicial review of the conviction.

(g) *Automatic review of death penalty by Delaware Supreme Court.* — (1) Whenever the death penalty is imposed, and upon the judgment becoming final in the trial court, the recommendation on and imposition of that penalty shall be reviewed on the record by the Delaware Supreme Court. Absent an appeal having been taken by the defendant upon the expiration of 30 days after the sentence of death has been imposed, the clerk of the Superior Court shall require a complete transcript of the punishment hearing to be prepared promptly and within 10 days after receipt of that transcript he shall transmit the transcript, together with a notice prepared by him, to the Delaware Supreme Court. The notice shall set forth the title and docket number of the case, the name of the defendant, the name and address of any attorney and a narrative statement of the judgment, the offense and the punishment prescribed. The Court shall, if necessary, appoint counsel to respond to the State's positions in the review proceedings.

(2) The Supreme Court shall limit its review under this section to the recommendation on and imposition of the penalty of death and shall determine:

a. Whether, considering the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender, the death penalty was either arbitrarily or capriciously imposed or recommended, or disproportionate to the penalty recommended or imposed in similar cases arising under this section.

b. Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection (e) of this section and, where applicable, § 636(a)(2)–(7) of this title.

(3) The Supreme Court shall permit the defendant and the State to submit briefs within the time provided by the Court, and permit them to present oral argument to the Court.

(4) With regard to review of the sentence in accordance with this subsection, the Court shall:

a. Affirm the sentence of death.

b. In cases where the trial court erroneously rejected the jury's recommendation of the death sentence, remand with directions to reinstate the jury's recommendation and to impose the penalty of death.

c. Set aside the sentence of death and remand for correction of any errors occurring during the hearing and for imposition of the appropriate penalty. Such errors shall not affect the determination of guilt and shall not preclude the reimposition of death where appropriately determined after a new hearing on punishment.

d. Set forth its findings as to the reasons for its actions.

(h) *Ordinary review not affected by section.* — Any error in the guilt phase of the trial may be raised as provided by law and rules of court and shall be in addition to the review of punishment provided by this section. (11 Del.C.1953, § 4209; 58 Del.Laws, c. 497, § 2; 59 Del.Laws, c. 284, § 2; 61 Del.Laws, c. 41, § 1.)

## APPENDIX B

### IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
#### IN AND FOR COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | NO: _____ |
| | § | |
| | § | |
| _____, | § | |
| | § | |
| Defendant. | § | |

TO: THE SUPREME COURT OF THE STATE OF DELAWARE.

The Trial Judge in this case, in which the death penalty was imposed, herewith submits this report, based upon the record in the case and data prepared by the Pre-Sentence Office:

#### A. Data Concerning Defendant

1. Name _____ 2. Date of Birth _____
 Last First Middle Mo. Day Yr.

 Address _____
 Street City State Zip

3. Social Security Number _____

4. Sex: M [ ] F [ ]

5. Marital Status: Never Married [ ] Married [ ] Divorced [ ] Spouse Deceased [ ]
 Married & Separated [ ]

6. Children

 (a) Number of children _____

 (b) Ages of children: 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 over 18
 (Circle age of each child)

7. Father living: Yes [ ] No [ ] If deceased, give date of death _____

8. Mother living: Yes [ ] No [ ] If deceased, give date of death _____

9. Number of children born to parents _____

10. Education—Highest Grade Completed: 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17
 (Circle one) [ College ]

11. Intelligence Level: Low (IQ below 70) [ ] Medium (IQ 70 to 100) [ ]
 High (IQ above 100) [ ]

12. Is defendant physically handicapped? Yes [ ] No [ ] If answer of affirmative, explain:
 _____

13. Is defendant mentally handicapped? Yes [ ] No [ ] If answer is affirmative, explain:
 _____

14. Psychiatric Evaluation Performed: Yes [ ] No [ ]

 (a) If performed, does it state affirmatively that defendant can:

 (1) Distinguish right from wrong? Yes [ ] No [ ]

 (2) Adhere to the right? [ ] . [ ]

 (3) Cooperate intelligently in his own defense? [ ] [ ]

 (b) If performed, were character or behavior disorders found? Yes [ ] No [ ]

 If answer is affirmative, explain: _____
 _____
 _____

 (c) What other pertinent psychiatric [and psychological] information was revealed? _____
 _____
 _____

15. Work record (last 10 years):

 | Type of Job | Pay | Dates Held | Reason for Termination |
 |---|---|---|---|
 | (a) | | | |
 | (b) | | | |
 | (c) | | | |
 | (d) | | | |
 | (e) | | | |

16. Does defendant have a record of prior convictions as an adult? Yes [ ] No [ ]

17. If the answer is affirmative, list each offense, the date of the offense, and the sentence imposed.

 | Offense | Date of Offense | . | Sentence Imposed |
 |---|---|---|---|
 | (a) | | | |
 | (b) | | | |
 | (c) | | | |
 | (d) | | | |

18. Was defendant a local resident or transient in the community? Resident [ ] Transient [ ]

## B. Data Concerning the Trial

1. Was the case tried with a jury? Yes [ ] No [ ]
2. How did defendant plead? Guilty [ ] Not Guilty [ ]

## C. Offense Related Data

1. On what ground was defendant found guilty? See 11 Del.C. § 636.

 (a) Defendant intentionally caused the death of another person. [　]

 (b) In the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, defendant recklessly caused the death of another person. [　]

 (c) Defendant intentionally caused another person to commit suicide by force or duress. [　]

 (d) Defendant recklessly caused the death of a law enforcement officer, corrections employee or fireman while such officer was in the lawful performance of his duties. [　]

 (e) Defendant caused the death of another person by the use of or detonation of a bomb or similar destructive device. [　]

 (f) Defendant, with criminal negligence, caused the death of another person in the course of and in furtherance of the commission or attempted commission of rape, kidnapping, arson in the first degree, robbery in the first degree, or immediate flight therefrom. [　]

 (g) Defendant caused the death of another person in order to avoid or prevent the lawful arrest of any person, or in the course of and in furtherance of the commission or attempted commission of escape in the second degree or escape after conviction. [　]

2. Were other offenses tried in the same trial? Yes [　]　　No [　]

 If the answer is affirmative, list those offenses and the verdict as to each.

 (a) _____ Guilty [　] Not Guilty [　]

 (b) _____ Guilty [　] Not Guilty [　]

 (c) _____ Guilty [　] Not Guilty [　]

 (d) _____ Guilty [　] Not Guilty [　]

3. Was any other person indicted for the homicide for which this defendant has been convicted? Yes [　] No [　]

4. How did any such other person plead? _____

5. Was any such other person convicted of the offense charged? Yes [　] No [　]

6. What sentence was imposed on any such other person? _____

 _____

7. If tried by jury, did the jury recommend the death sentence? Yes [　] No [　]

8. Was a statutory aggravating circumstance found in the trial of this defendant? See 11 Del.C. § 4209(e) Yes [　] No [　]

9. Which of the following statutory aggravating circumstances was instructed and which was found?

 | | Instructed | Found |
 |---|---|---|
 | (a) The murder was committed by a person in, or who has escaped from, the custody of a law-enforcement officer, or place of confinement. | [　] | [　] |
 | (b) The murder was committed for the purpose of avoiding or preventing an arrest or for the purpose of effecting an escape from custody. | [　] | [　] |
 | (c) The murder was committed against any law-enforcement officer, corrections employee or fireman, while such victim was engaged in the performance of his official duties. | [　] | [　] |

 (d) The murder was committed against a judicial officer, a former judicial officer, Attorney General, former Attorney General, Assistant or

Deputy Attorney General or former Assistant or Deputy Attorney General, State Detective or former State Detective, Special Investigator or former Special Investigator, during, or because of, the exercise of his official duty. [ ] [ ]

(e) The murder was committed against a person who was held or otherwise detained as a shield or hostage. [ ] [ ]

(f) The murder was committed against a person who was held or detained by defendant for ransom or reward. [ ] [ ]

(g) The murder was committed against a person who was a witness to a crime and who was killed for the purpose of preventing his appearance or testimony in any grand jury, criminal or civil proceeding involving such crime. [ ] [ ]

(h) Defendant paid or was paid by another person or had agreed to pay or be paid by another person or had conspired to pay or be paid by another person for the killing of the victim. [ ] [ ]

(i) Defendant was previously convicted of another murder or manslaughter or of a felony involving the use of, or threat of, force or violence upon another person. [ ] [ ]

(j) The murder was committed while defendant was engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any degree of rape, arson, kidnapping, robbery, sodomy, or burglary. [ ] [ ]

(k) Defendant's course of conduct resulted in the deaths of 2 or more persons where the deaths are a probable consequence of defendant's conduct. [ ] [ ]

(l) The murder was committed by means of torture, use of an explosive device or poison, or defendant used such means on the victim prior to murdering him. [ ] [ ]

(m) Defendant caused or directed another to commit murder or committed murder as an agent or employee of another person. [ ] [ ]

(n) The murder was outrageously or wantonly vile, horrible or inhuman. [ ] [ ]

(o) Defendant was under a sentence of life imprisonment, whether for natural life or otherwise, at the time of the commission of the murder. [ ] [ ]

(p) The murder was committed for pecuniary gain. [ ] [ ]

(q) The victim was pregnant. [ ] [ ]

10. List nonstatutory aggravating circumstances in evidence, if any.

(a) _____

(b) _____

(c) _____

(d) _____

11. (a) Was there evidence of mitigating circumstances? Yes [ ] No [ ]
 (b) If the answer to 11(a) is affirmative, list any such mitigating circumstance in evidence:

(1) _____

(2) _____

(3) _____

(4) _____

12. If tried with a jury, was the jury instructed to consider mitigating circumstances?
Yes [ ] No [ ]

13. Was a weapon used in commission of the crime? Yes [ ] No [ ]
If the answer is affirmative, was the weapon: Poison [ ] Motor Vehicle [ ]
Blunt Instrument [ ] Sharp Instrument [ ] Firearm [ ] Other [ ]

14. Was there evidence that defendant was under the influence of narcotics or dangerous drugs at the time of the offense? Yes [ ] No [ ] If answer is affirmative, explain: _____

_____

_____

### D. Data Concerning The Victim

1. Name: _____
 Last First Middle

2. Date of Birth: _____ 3. Sex: M [ ] F [ ]
 Mo. Day Yr.

4. Was the victim related by blood or marriage to defendant? Yes [ ] No [ ]

5. If the answer is affirmative, what was the relationship? _____

_____

_____

6. Was the victim an employer or employee of defendant? No [ ] Employer [ ]
 Employee [ ]

7. Was the victim acquainted with defendant? No [ ] Casual Acquaintance [ ] Friend [ ]

8. Was the victim a local resident or transient in the community? Resident [ ] Transient [ ]

9. Was the victim of the same race as defendant? Yes [ ] No [ ]

10. Was the victim of the same sex as defendant? Yes [ ] No [ ]

11. Was the victim held hostage during the crime? No [ ] Yes – Less than an hour [ ]
 Yes – More than an hour [ ]

12. What was the victim's reputation in the community? Good [ ] Bad [ ] Unknown [ ]

13. Did the victim have a record of prior convictions as an adult? Yes [ ] No [ ]

14. If the answer is affirmative, list each offense, the date of the offense, and the sentence imposed.

Offense Date of Offense Sentence Imposed
(a) _____
(b) _____
(c) _____
(d) _____

15. Was the victim physically abused? Yes [ ] No [ ] If the answer is affirmative, explain:

_____

_____

_____

*

## E. Representation of Defendant *

1. Date counsel secured _____

2. Was counsel: (a) a Public Defender [ ] (b) Retained by defendant [ ]
 (c) Appointed by the Court [ ]

3. If counsel was appointed by the Court, was it because: (a) Defendant was unable to afford counsel? [ ] (b) Defendant refused to secure counsel? [ ] (c) Other (explain)
 _____

4. Was defendant represented by the same counsel throughout the trial? Yes [ ] No [ ]

5. If not, explain _____
 _____
 _____

## F. General Considerations

1. Was race raised by defendant as an issue at trial? Yes [ ] No [ ]

2. Did race otherwise appear as an issue at trial? Yes [ ] No [ ]

3. What percentage of the population of the County is the same race as defendant?
 (a) Under 10% [ ] (b) 10 to 25% [ ] (c) 25 to 50% [ ] (d) 50 to 75% [ ]
 (e) 75 to 90% [ ] (f) Over 90% [ ]

4. Were members of defendant's race represented on the jury? Yes [ ] No [ ]

5. Was the jury instructed to exclude race as an issue? Yes [ ] No [ ]

6. Was the jury instructed to disregard community publicity about the case? Yes [ ] No [ ]

7. Was the jury instructed to avoid any influence of passion, prejudice, or other arbitrary factor during deliberation? Yes [ ] No [ ]

8. Was the punishment hearing held before the same jury which sat at the guilt phase of the trial?
 Yes [ ] No [ ] If not, state the reason and any additional information deemed important to this report as the result thereof: _____
 _____
 _____
 _____

## G. Chronology of Case

| | | Elapsed Days |
|---|---|---|
| 1. Date of Offense _____ | | _____ |
| 2. Date of Arrest _____ | | _____ |
| 3. Date Trial Began _____ | | _____ |
| 4. Date Sentence Imposed _____ | | _____ |
| 5. Date post trial motions ruled on _____ | | _____ |
| 6. Date Trial Judge's Report Completed _____ | | _____ |
| 7. Total elapsed days _____ | | |

_____

* If more than one attorney represents defendant, answer the questions as to each attorney and attach to this report.

**1106** 

This report was submitted to the Attorney General and to defendant's counsel for comments concerning the factual accuracy of the report, and

1. Such comments are attached ( )
2. Counsel stated that no comments would be submitted ( )
3. Counsel has not responded ( )

_____
Date

_____
Judge, Superior Court

*****

Use this space for additional comments, if necessary.