**STATE of Delaware**

v.

**Charles M. COHEN, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted: March 9, 1992.
Decided: March 18, 1992.
Supplemental Opinion: April 21, 1992.
Reissued: June 30, 1993.

Stephen M. Walther, Asst. State Prosecutor, and Robert J. O'Neill, Jr., Deputy Atty. Gen., for State of Delaware.

J. Dallas Winslow, Jr., and Nancy Jane Perillo, Asst. Public Defenders, for Charles M. Cohen.

### OPINION

HERLIHY, Judge.

Presently before the Court is Charles M. Cohen's [defendant] motion *in limine* to bar introduction of evidence of certain alleged unadjudicated criminal activity at the upcoming penalty hearing. Pursuant to 11 *Del.C.* § 408(a) [1], the Court has accepted the defendant's plea of guilty but mentally ill involving

---

1. Where a defendant's defense is based upon allegations which, if true, would be grounds for a verdict of "guilty, but mentally ill" or the defendant desires to enter a plea to that effect, no finding of "guilty, but mentally ill" shall be rendered until the trier of fact has examined all appropriate reports (including the presen-

tence investigation); has held a hearing on the sole issue of the defendant's mental illness, at which either party may present evidence; and is satisfied that the defendant was in fact mentally ill at the time of the offense to which the plea is entered.

11 *Del.C.* § 408(a).

the murder of his parents on November 12, 1988. The Court entered its finding on February 13, 1992. The State is seeking the death penalty.

## A

After the defendant killed his parents on November 12, 1988, he left Delaware on a long trek, crisscrossing the country several times. He was arrested under a false name in Louisiana in April 1990 but his true identity became known several weeks later. While the Louisiana nomenclature may differ from Delaware's, for purposes of this decision, the Louisiana charges will be referred to as robbery and theft.

The State has indicated it will seek to introduce as non-statutory aggravating circumstances under 11 *Del.C.* §§ 4209(c) and (e)(2) various alleged activities of the defendant. They include (1) the murder of Conrad Lutz in San Francisco, California in February 1989, (2) the Louisiana robbery and theft, (3) the attempted running down of a parking lot attendant in Los Angeles in late 1988, (4) the defendant's use of false names, (5) the defendant's manipulation of people to get help and assist in escape and avoidance of capture, (6) the defendant's stealing of property to support his continued evasion of arrest, (7) the defendant's statement to the police that he was a "con man", (8) the defendant's apparent violent relationship with an ex-girlfriend, Katie Adams, (9) the defendant's use/abuse of illegal drugs before and after his parents' murder, (10) an urging to kill again while on the run and in Provincetown, Massachusetts, and (11) the defendant's engaging in homosexual relationships to assist in avoidance of apprehension.

The State indicates it will produce at the hearing the parking lot attendant and the witnesses from Louisiana. Most of the rest of what it seeks to present would be introduced through the statements the defendant gave to the New Castle County Police on May 26 and 28, 1990. The State says it will have Katie Adams testify. It is not clear to the Court at this time how the State intends

to establish the California murder beyond the defendant's detailed confession.

The defendant opposes introduction of any of the listed evidence. As to the Lutz murder and the Los Angeles incident [2] he argues that (1) he has only been indicted for the Lutz murder and there is no conviction, (2) the only apparent evidence linking him to that murder is his confession which could be suppressed there, (3) he has not been charged at all for the Los Angeles incident. He notes that all of the Louisiana charges have been dropped.

As to the balance of the State's proffer, which will be shown through his two statements to the police, he contends that there is no other evidence and such admission violates the *corpus delicti* rule. Counsel offered some personal experiences from other capital penalty hearings involving testimony about uncharged or untried criminal conduct, but the defendant's motion to bar this evidence squarely raises issues of first impression in Delaware.

## B

Resolution of the issues must start with the applicable statute, 11 *Del.C.* § 4209. As amended in November 1991, the first step is for the jury to make a recommendation whether, beyond a reasonable doubt, at least one statutory aggravating circumstance exists, and

> [w]hether, by a preponderance of the evidence, after weighing all relevant evidence in aggravation or mitigation which bear upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist.

11 *Del.C.* § 4209(c)(3)a.2.

The trial judge shall impose a sentence of death if, after considering the jury's recommendation, the judge finds beyond a reasonable doubt that a statutory aggravating circumstance exists and

2. As described at oral argument, the incident, if it occurred in Delaware, could have led to a

charge of reckless endangering. 11 *Del.C.* §§ 603 or 604.

[b]y a preponderance of the evidence, after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that the aggravating circumstances found by the Court to exist outweigh the mitigating circumstances found by the Court to exist.

11 *Del.C.* § 4209(d)(1)b.

■ The Court has found a factual basis for a plea of guilty but mentally ill to two murders committed by the defendant. The murder of two persons is an enumerated statutory aggravating circumstance and his plea establishes this statutory aggravating circumstance as a matter of law. 11 *Del.C.* § 4209(e)(1)k. *State v. Pennell,* Del.Supr., 604 A.2d 1368, 1375 (1992); *Bailey v. State,* Del.Supr., 503 A.2d 1210, 1212 (1984). Also, the guilty but mentally ill finding establishes a mitigating circumstance as a matter of law. *Sanders v. State,* Del.Supr., 585 A.2d 117 (1990).

■ Both the jury, in considering its recommendation, and the judge, in deciding upon the sentence of life imprisonment or death, first must find whether, beyond a reasonable doubt, a statutory aggravating circumstance exists. As noted, that finding has already been made. However, the conduct which the State seeks to introduce here, itself, does not fall within any statutory aggravating circumstance.

Our cases indicate, then, that statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death.

*Zant v. Stephens,* 462 U.S. 862, 878, 103 S.Ct. 2733, 2743, 77 L.Ed.2d 235, 250–51 (1983).

■ Delaware's statute, and Supreme Court cases interpreting it, establish that a jury (under the law as it existed prior to November 1991 when it decided the sentence) may consider any relevant factors. *Deputy v. State,* Del.Supr., 500 A.2d 581, 601 (1985); *Flamer v. State,* Del.Supr., 490 A.2d 104, 136, *cert. denied,* 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983). A "very wide range of evidence is admissible in a penalty hearing." *Dawson v. State,* Del.Supr., 581 A.2d 1078, 1101 (1990), *rev'd. and remanded, Dawson v. Delaware,* 503 U.S. ——, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992).

The statute itself says:

At the hearing, evidence may be presented as to any matter that the Court deems relevant and admissible to the penalty to be imposed. The evidence shall include matters relating to any mitigating circumstance and to any aggravating circumstance....

11 *Del.C.* § 4209(c).

The prior decisions of this Court clearly reflect a literal construction of the broad language in the Delaware death penalty statute that permits the presentation of evidence "as to any matter that the Court deems relevant and admissible to the penalty to be imposed".

*Petition of State of Del.,* Del.Supr., 597 A.2d 1, 3 (1991) *citing* 11 *Del.C.* § 4209(c).

In *State v. White,* Del.Supr., 395 A.2d 1082, 1088–89 (1978), the Supreme Court said:

The Delaware statute permits *consideration of any aggravating* factors.... There is no constitutional defect in the statutory procedure of allowing consideration of other aggravating circumstances; such procedure contributes to attention to all specific circumstances of the crime and the defendant. [Emphasis in original opinion.]

■ Under these standards, other criminal activity or alleged criminal activity is relevant, particularly when it involves violence. The most serious incident the State offers as a non-statutory aggravating circumstance is the murder of Conrad Lutz in San Francisco. On information and belief, the defendant has been indicted for this offense, but not tried. To the Court's knowledge, the defendant has not been charged with the Los Angeles parking lot attendant incident. The charges originally placed against him in Lou-

isiana for his conduct there in April 1990, to the Court's information and belief, have been *nol prossed.* There was no trial in Louisiana on those charges.

■ The Delaware statute appears to be silent about the burden of proof, if any, at a penalty hearing necessary to establish the commission of a crime for which the defendant has not been convicted. Initially, some guidance regarding admissibility can be found in the Delaware Supreme Court's decision on the admissibility of victim impact evidence in which the Court declared that such evidence "must be made ... in accordance with the Delaware death penalty statute, the *applicable rules of evidence,* and any relevant state or federal constitutional requirements." *Petition of State of Delaware,* 597 A.2d at 4 [emphasis added]. Accordingly, the admissibility of conduct which would be criminal in nature would also be governed by the rules of evidence and/or constitutional requirements, if any.

■ A logical analogy to the issues herein is "other crimes" or "wrong acts" evidence with the admissibility of these incidents viewed in light of D.R.E. 404(b). This section is not directly controlling because it says "[e]vidence of other crimes, wrongs or acts is not admissible to prove the [defendant's] character...." *Id.* However, bad character is relevant to a penalty hearing. 11 *Del.C.* §§ 4209(c) and (d); *White,* 395 A.2d 1082. Under certain circumstances, character can be proven by specific instances. D.R.E. 405(b).

As far as the incidents herein, the State seeks to introduce evidence of more than bad character. The State seeks to show the defendant actually committed criminal acts to establish the existence of an (non-statutory) aggravating circumstance. The State might have sought to introduce these incidents, had there been a trial, and the Court would have been required to analyze the incidents under D.R.E. 404(b) and *Getz v. State,* Del.Supr., 538 A.2d 726 (1988).

■ It is possible that the Court would have admitted evidence of these incidents (over likely defense objections).[3] The two California incidents would go to the issue of consciousness of guilt and flight. *Cf. Lesko v. Owens,* 881 F.2d 44 (3rd Cir.1989) (upholding admissibility at trial for killing police officer the prior killing of another person in order to show intent in the second killing and avoidance of apprehension for the earlier killing).

> Much of the information that is relevant to the sentencing decision may have no relevance to the question of guilt, or may even be extremely prejudicial to a fair determination of that question.

*Gregg v. Georgia,* 428 U.S. 153, 190, 96 S.Ct. 2909, 2933, 49 L.Ed.2d 859, 884 (1976). Thus, even if the Court had ruled evidence of these unadjudicated incidents to be inadmissible during the guilt phase because their probative value was outweighed by the danger of unfair prejudice, that balancing becomes different in the penalty phase. *Gregg,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859. Or to state it another way, the relevance of such incidents in the guilt phase may be less meaning the threshold of unfair prejudice is more easily crossed. D.R.E. 403. On the other hand, such incidents assume a greater relevance in a capital penalty hearing.

■ However, in the Court's view, even with heightened relevance of this evidence in a penalty hearing, there remains concern about the unfair prejudice that may result from evidence about a crime for which there has been no conviction. Indeed, reliance upon a felony conviction as a statutory aggravating circumstance when such conviction is later reversed is unconstitutional. *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). The United States Supreme Court said in that case, "[h]ere the jury was allowed to consider evidence that has been revealed to be materially inaccurate." *Id.* at 590, 108 S.Ct. at 1989, 100 L.Ed.2d at 587.

In some circumstances, evidence pertaining to an unconstitutionally vague statutory

---

**3.** In his statement to the county police, the defendant stated he killed Lutz, in part, because of fear of discovery by Lutz of the defendant's true identity. He feared that identity was about to be revealed in an upcoming *America's Most Wanted* program.

aggravating circumstance may be otherwise admissible. *Zant*, 462 U.S. at 885–86, 103 S.Ct. at 2747, 77 L.Ed.2d at 255 (evidence supporting convictions for assault introduced to prove an unconstitutionally vague statutory aggravating circumstance of "substantial history of serious assaultive criminal convictions" is otherwise admissible as a non-statutory consideration). Accord, *Deputy*, 500 A.2d at 601; *Flamer*, 490 A.2d at 136. The evidence admissible in *Zant* involved convictions, unlike the present situation.

Under the new death penalty statute, the jury and the judge must weigh the totality of the circumstances. *State v. Cohen*, Del.Supr., 604 A.2d 846, 849 (1992). This infers an exercise of discretion. That discretion "must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg*, 428 U.S. at 189, 96 S.Ct. at 2932, 49 L.Ed.2d at 883.

To be admissible in a *trial* where guilt or innocence is determined, other "bad acts" or crimes must be established by evidence which is "plain, clear and conclusive". *Getz*, 538 A.2d at 734. This Court recognizes that *Getz* holds that at trial a judge first must determine evidence of other crimes can be shown by evidence which is plain, clear and conclusive. Once the judge makes that preliminary evidentiary decision, *Getz* does not hold that the State has to then prove such acts to the fact finder by such a standard.

The jury cannot recommend a death sentence based alone on this kind of non-statutory, unadjudicated criminal activity. The Court cannot impose a sentence of death based on such evidence. Because such evidence enters the weighing process for jury and judge if a statutory aggravating circumstance is properly proven and because of its impact potential in that process, the Court deems it necessary to impose on the State a threshold admissibility burden of proof before the fact finders, jury and judge may even consider such evidence as an (non-statutory) aggravating circumstance.

The Court cannot find a *constitutional* requirement that a non-statutory aggravating circumstance, even unadjudicated

criminal activity, need be proven beyond a reasonable doubt. *Cf. Ford v. Strickland*, 696 F.2d 804, 818 (11th Cir.1983); *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). In holding that Georgia's death penalty statute passed constitutional muster in *Gregg*, the Supreme Court had before it a statute where there was no standard or burden of proof for non-statutory aggravating factors. The Court said:

> We think that the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at such a [penalty] hearing and to approve open and far-ranging argument.... So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision.

*Gregg*, 428 U.S. at 203–204, 96 S.Ct. at 2939, 49 L.Ed.2d at 891–92.

### C

Prior to the enactment of the amendment to 11 *Del.C.* § 4209 in November 1991, Delaware's law was closely patterned after Georgia's death penalty statute. *Flamer*, 490 A.2d at 135, *White*, 395 A.2d at 1085. Georgia has two categories of aggravating circumstances, one statutory and, like Delaware, the other relevant non-statutory circumstances. An examination of various Georgia cases provides some guidance to the issues raised in this case.

In *Potts v. State*, 259 Ga. 96, 376 S.E.2d 851 (1989), the state introduced evidence about a prior murder. The defendant had pled guilty to the prior murder but claimed at this subsequent trial that it was an involuntary plea. It could not be proved the plea was voluntary. "The state did not use a prior conviction in aggravation; it proved the commission of the crime itself, with evidence and eyewitness testimony (including Potts' confession). It was not error to do so." *Id.* at 857.

In *Devier v. State*, 253 Ga. 604, 323 S.E.2d 150 (1984), *cert. denied*, 471 U.S. 1009, 105

S.Ct. 1877, 85 L.Ed.2d 169 (1985), the Georgia Supreme Court upheld the admission at a penalty hearing of the testimony of a rape victim where the defendant was never convicted. Any *"lawful"* evidence to show motive, other crimes, lack of remorse, general moral character and predisposition to commit other crimes is admissible in aggravation. *Id.* at 163.

In *Fair v. State,* 245 Ga. 868, 268 S.E.2d 316, *cert. denied,* 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980), *reh'g. denied,* 449 U.S. 1104, 101 S.Ct. 903, 66 L.Ed.2d 831 (1981), the court upheld the admission and use of evidence in the penalty hearing of a charged, but untried, murder. The murder conviction being appealed and the murder used in aggravation were connected in time and motive.

In *Moon v. State,* 258 Ga. 748, 375 S.Ed.2d 442 (1988), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1638, 113 L.Ed.2d 733, *reh'g. denied,* —— U.S. ——, 111 S.Ct. 2841, 115 L.Ed.2d 1010 (1991), the court affirmed the use at a penalty hearing of two untried murders, an untried armed robbery and a sodomy charge dismissed on jurisdictional grounds. As to the sodomy charge, that court noted:

> The [trial] court granted the defendant's pretrial motion to conduct a hearing outside the presence of the jury to determine before [the victim] testified whether the evidence *sufficiently* established that [the defendant] had committed the offense of aggravated sodomy. However, the court inadvertently overlooked this procedure. The defendant did not object to the failure to conduct a preliminary hearing, and, in any event, since [the victim's] testimony *plainly* established the offense, any error is harmless.

*Id.* 375 S.E.2d at 452 [emphasis added]. One of the murder charges used in aggravation had been dismissed before trial. The Georgia court found no error in the use of an untried charge in aggravation. *Id.* at 452. The use of the words "sufficiently" and "plainly" lend support to this Court's conclusion that a threshold admissibility standard needs to be utilized.

In *Browner v. State,* 257 Ga. 321, 357 S.E.2d 559 (1987), that court sustained the use at a penalty hearing as a non-statutory aggravating circumstance rape and assault charges as yet untried which occurred four months after the murder.

In *Pitts v. State,* Ga.Supr., 386 S.E.2d 351 (1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 217, 112 L.Ed.2d 177, *reh'g. denied,* 498 U.S. 994, 111 S.Ct. 543, 112 L.Ed.2d 552 (1990), that court allowed as an aggravating circumstance evidence of the original crime charged where the defendant pled to a lesser charge. The victim of the crime testified. Such testimony may be offered "to prove the commission of the greater offense." *Id.* at 356. That court also said *"reliable* evidence of criminal conduct by the defendant may be admitted ... even if the defendant has not been convicted, so long as he has not been acquitted." *Id.* at 356 [emphasis added].

 Georgia permits the use of evidence from charges which have been *nol prossed* as an aggravating circumstance. *Hammond v. State,* 260 Ga. 591, 398 S.E.2d 168 (1990).

The court in *Tucker v. Kemp,* 762 F.2d 1480 (11th Cir.) *(en banc) vacated,* 474 U.S. 1001, 106 S.Ct. 517, 88 L.Ed.2d 452 (1985) *reinstated,* 802 F.2d 1293 (11th Cir.1986), *cert. denied,* 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987), upheld the use of charged but untried crimes and uncharged criminal activities in capital penalty hearings. The court stated, "[i]n general, the relevant inquiry for information at sentencing is whether it is *reliable." Tucker,* 762 F.2d at 1487 [emphasis added].

In the case of *Williams v. Lynaugh,* 814 F.2d 205 (5th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987), the court upheld the constitutionality of the use of unadjudicated offenses in a capital penalty hearing. The evidence consisted of testimony of two eyewitnesses who identified the defendant of an armed robbery committed two weeks prior to the murder.

> The purpose of allowing evidence of nonadjudicated offenses to be considered in the sentencing phase is to assist the jury in determining whether the defendant is likely to be a continuing threat to society. This evidence helps focus the jury on the

particular circumstances of the individual offense and the individual offender.

*Id.* at 208.

■ Use of uncounseled convictions is admissible if there was "reliable" evidence of the criminal activity behind the convictions. *Richardson v. Johnson,* 864 F.2d 1536, 1541 (11th Cir.), *cert. denied,* 490 U.S. 1114, 109 S.Ct. 3175, 104 L.Ed.2d 1037 (1989) (concerning an Alabama death sentence). The *Richardson* court also noted that *Johnson v. Mississippi* did not bar such evidence because, while the conviction itself may be invalid, the underlying conduct remains relevant. *Richardson,* 864 F.2d at 1541–42 n. 11.

The coupling of the word "reliable" with the testimony of an eyewitness would infer the need to use a threshold admissibility standard.

### D

The 1991 amendment to the Delaware death penalty more closely aligned Delaware's sentencing procedure with that of Florida and Indiana where the judges, not the juries, make the ultimate sentencing decision. However, there is a key difference between Florida's law and Delaware's law. While a portion of the statute [4] *appears* to allow introduction of the "wide range" of relevant non-statutory aggravating evidence, the Florida Supreme Court has held otherwise. *Provence v. State,* Fla.Supr., 337 So.2d 783, 786 (1976), *cert. denied,* 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977) (evidence of two armed robbery charges pending against defendant unrelated to murder for which convicted improperly considered in sentencing); *Elledge v. State,* Fla.Supr., 346 So.2d 998, 1001–1003 (1977), *aff'd. on appeal after remand,* 408 So.2d 1021 (1981), *cert. denied,* 459 U.S. 981, 103 S.Ct. 316, 74 L.Ed.2d 293 (1982), *reh'g. denied,* 459 U.S. 1137, 103 S.Ct. 771, 74 L.Ed.2d 984 (1983)

(evidence of an unconvicted murder improperly considered in penalty phase because it did not relate to a statutory aggravating circumstance but evidence of *conviction* of another murder committed after a murder conviction being appealed was properly admitted as a statutory aggravating circumstance); *Trawick v. State,* Fla.Supr., 473 So.2d 1235, 1240 (1985), *cert. denied,* 476 U.S. 1143, 106 S.Ct. 2254, 90 L.Ed.2d 699, *reh'g. denied,* 478 U.S. 1014, 106 S.Ct. 3323, 92 L.Ed.2d 730 (1986) (evidence of defendant discharging gun from car prior to robbery/murder in store did not relate to statutory aggravating circumstance and was impermissibly used in sentencing consideration as to lack of remorse); *Floyd v. State,* Fla. Supr., 569 So.2d 1225, 1231 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991) (flight not a statutory aggravating circumstance and may not be considered in penalty phase); *Proffitt v. Florida,* 428 U.S. 242, 256, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913, 925 (1976) n. 14.[5]

Delaware's amended death penalty statute is a hybrid of Georgia's and Florida's statutes. Delaware and Georgia permit the consideration by judge and jury of the "wide range" of non-statutory aggravating circumstances but Florida's statute does not. Based on the interpretations of that portion of Georgia's statute which is very similar to Delaware's statute and which was not amended out in 1991, this Court equates "reliable" with plain and clear.

Indiana's death penalty statute does not provide for aggravating circumstances beyond ones specifically listed. *Ind.Code,* § 35–50–2–9; *Brewer v. State,* 275 Ind. 338, 417 N.E.2d 889 (1981), *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384, *reh'g. denied,* 458 U.S. 1132, 103 S.Ct. 18, 73 L.Ed.2d 1403 (1982). A statutory circumstance must be proven beyond a reasonable doubt, including "[t]he defendant has com-

---

4. In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence the defendant, and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (6) and (7).
 Fla.Stat.Ann. § 921.141.

5. Like Delaware, Florida does allow introduction of other crimes evidence in a trial where certain tests are met. *Williams v. State,* Fla.Supr., 110 So.2d 654, *cert. denied,* 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Florida's tests for admissibility of such evidence, which like Delaware, cannot be used to show bad character are very similar to Delaware's. *Id.* at 663.

mitted another murder, at any time, regardless of whether he as been convicted of that other murder". *Id.* 417 N.E.2d at 895, n. 1.

### E

The issue then is what should be the threshold of admissibility of evidence of commission of or involvement in criminal activity which is unadjudicated.

As *Getz* makes clear, *Getz*, 538 A.2d at 734, the derivation of the phrase "plain, clear and conclusive" is found in *Renzi v. State*, Del. Supr., 320 A.2d 711, 712 (1974). *Renzi* itself adopted language from two other cases outside Delaware. In one of those two cases, the court said there must be "substantial evidence" that the defendant committed the other crime. *State v. Hughes*, 102 Ariz. 118, 426 P.2d 386, 391 (1967). Further, the Arizona Supreme Court held that the evidence of a prior crime must be shown either by "substantial proof" or by evidence which is "clear and *convincing*". *Hughes*, 426 P.2d at 390–91 [emphasis added].

The second case cited in *Renzi* is *Kraft v. United States*, 238 F.2d 794, 802 (8th Cir. 1956). In holding that for evidence of a prior crime to be admissible at trial, it must ·be plain, clear and conclusive, the *Kraft* court, in turn, used language from *Paris v. United States*, 260 F. 529 (8th Cir.1919).

The use of the word "conclusive" raises certain troubling issues. There are differences between "convincing" and "conclusive". The latter word at a minimum, suggests unanswerable evidence. *Hobart v. Hobart Estate Co.*, 26 Cal.2d 412, 159 P.2d 958, 976 (1945). At the maximum, conclusive means irrefutable or decisive. *State v. Brandenberger*, 151 Iowa 197, 130 N.W. 1065, 1070 (1911); *Wyatt v. Baughman*, 121 Utah 98, 239 P.2d 193, 196 (1951). It has also been held to mean "decisive and uncontrovertible". *Cope v. State*, 118 Tex.Crim. 232, 39 S.W.2d 891, 892 (1931). In addition, "conclusive evidence" has been interpreted to mean proof beyond a reasonable doubt. *Amalgamated Housing Corp. v. Kelly*, 193 Misc. 961, 82 N.Y.S.2d 577, 579–80 (1948).

It is clear that the presence of the word "conclusive" potentially creates a burden of proof on the State greater than beyond a reasonable doubt. In a penalty proceeding, that standard is clearly inapplicable. In this Court's opinion, neither the United States Constitution nor 11 *Del.C.* § 4209 requires that degree of burden of proof for the *admissibility* of evidence of unadjudicated crimes. However, the word "convincing" more accurately states the threshold admissibility standard which must be met in regard to unadjudicated crimes.

*Renzi* adopted for Delaware the phrase "plain, clear and conclusive". While that has been the benchmark by which the *admissibility in trials of* "other crimes" evidence has been tested, an examination of *Renzi* and its progeny lend support to using "plain, clear and convincing" in this and other penalty proceedings. *Renzi*, 320 A.2d 711 (hearsay testimony of police officer describing drug buy he did not see and where informant and marked money not introduced, fails test); *Benson v. State*, Del.Supr., 395 A.2d 361 (1978) (defendant's confession to police of other burglaries alone was insufficient where there was no evidence of burglarized homes or linkage to those homes of stolen items bought from defendant during a fencing sting); *Goldsmith v. State*, Del.Supr., 405 A.2d 109 (1979) (evidence of post-arrest attempted witness bribery and intimidation allowed); *Lovett v. State*, Del.Supr., 516 A.2d 455 (1986) (defendant's letter implying plan to murder prosecution witness and request to fellow inmate to poison food of that inmate witness met test); *Bailey v. State*, Del.Supr., 521 A.2d 1069 (1987) (prisoner's testimony that defendant offered him a contract to kill an inmate who was a prosecution witness was sufficient); *Diaz v. State*, Del.Supr., 508 A.2d 861 (1986) (evidence of eyewitness to defendant's prior beatings of murder victim held to pass test); *State v. Walls*, Del.Super., 541 A.2d 591 (1987) (testimony of robbery victim who identified defendant meets test); *Howard v. State*, Del.Supr., 549 A.2d 692 (1988) (eyewitness testimony to purchase of cocaine in a forgery case held sufficient); *Weber v. State*, Del.Supr., 547 A.2d 948 (1988) (witness' testimony that defendant made claim of killing others and previously bribing judge met test); *Tucker v. State*, Del.Supr., 564

A.2d 1110 (1989) (evidence in hospital record of rape victim's statement of prior sexual contact with defendant excluded properly by trial court); *Kornbluth v. State*, Del.Supr., 580 A.2d 556 (1990) (informant's testimony, corroborated by police officers, in part, of drug buys from defendant held sufficient); *Hanna v. State*, Del.Supr., 591 A.2d 158 (1991) (testimony by codefendant of defendant's admission of a prior theft from murder victim held to meet test).

Clearly, the *Renzi* test of plain, clear and conclusive is a threshold test for the admissibility of other bad act evidence in a trial before the jury hears it. *Getz*, 538 A.2d at 734.

It is noteworthy that the United States Supreme Court, in interpreting the federal Rule 404(b) relating to other crimes evidence, has abandoned the need for a trial judge to determine that such evidence meets any standard of proof such as plain, clear and conclusive or preponderance of the evidence. *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

In *Huddleston*, the Supreme Court rejected the defendant's argument that Rule 404(b) mandates a preliminary finding that the prior act occurred. *Huddleston*, 485 U.S. at 687, 108 S.Ct. at 1500, 99 L.Ed.2d at 780–81. The Court concluded that Federal Rule ·104(a) (identical to Delaware's rule 104(a)) does not require the trial court to make a preliminary finding that the prior act was proved by a preponderance of the evidence.[6]

The United States Supreme Court said, "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston*, 485 U.S. at 689, 108 S.Ct. at 1501, 99 L.Ed.2d at 782. The Supreme Court stated that the question of relevancy of prior criminal acts is dealt with under Rule 104(b). *Id.* It went on to hold:

In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs

credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact— here, that the televisions were stolen—by a preponderance of the evidence.

*Huddleston*, 485 U.S. at 690, 108 S.Ct. at 1501, 99 L.Ed.2d at 782–83.

Recently in a non-capital sentencing context, the Delaware Supreme Court stated that.

Thus, in reviewing a sentence within statutory limits, this Court will not find error of law or abuse of discretion unless it is clear from the record below that a sentence has been imposed on the basis of demonstrably false information or information lacking a minimal indicium of reliability. [Citations omitted.]

*Mayes v. State*, Del.Supr., 604 A.2d 839, 843 (1992).

The United States Supreme Court has stated that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973, 989 (1978).

As was stated in *Gregg v. Georgia:*

If an experienced trial judge, who daily faces the difficult task of imposing sentences, has a vital need for accurate information about a defendant and the crime he committed in order to be able to impose a rational sentence in the typical criminal case, then accurate sentencing information is an indispensable prerequisite to a reasoned determination of whether a defendant shall live or die by a jury of people who may never before have made a sentencing decision.

*Gregg v. Georgia*, 428 U.S. 153, 190, 96 S.Ct. 2909, 2933, 49 L.Ed.2d 859, 884 (1976).

While the Court is now the ultimate sentencing authority in this or any other capital case, the role of the jury and its recommen-

---

**6.** The defendant conceded before the Supreme Court that such prior conduct need not be proved by clear and convincing evidence. *Hud-* *dleston*, 485 U.S. at 687, 108 S.Ct. at 1500, 99 L.Ed.2d at 781 (n. 5).

dations is very significant. This case presents the most extreme example possible of a non-adjudicated criminal activity as a non-statutory aggravating factor. That example is the killing of Conrad Lutz.

The role in the jury's weighing process of an unadjudicated murder cannot be fully measured. The impact of such evidence has to be significant in a case where the defendant is facing a death penalty for two other killings. The other unadjudicated crime evidence, while not as adverse as the Lutz murder, is still, however, evidence which deserves special care.

The death penalty differs from all other forms of punishment. *Furman v. Georgia,* 408 U.S. 238, 306, 92 S.Ct. 2726, 2760, 33 L.Ed.2d 346, 388 (1972). In the context of requiring a clear and not vague statutory aggravating circumstance, the United States Supreme Court has said, "an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens,* 462 U.S. at 877, 103 S.Ct. at 2742, 77 L.E.2d at 249–50.

By analogy, non-statutory aggravating circumstances must assist jury and judge in reaching the appropriate weighing decision. Evidence of the commission of other crimes is obviously a very relevant consideration in that weighing process. Where there has been a conviction, the threshold of reliability has been crossed. Where there has not been a conviction, some measure of reliability is necessary.

Because of the potential impact of evidence of unadjudicated crimes, particularly in this case and in any capital penalty proceeding, the Court holds that such evidence is admissible if it is plain, clear and convincing. This is a threshold admissibility standard. Such evidence can be proffered by an offer of proof or a hearing outside the jury's presence. If the Court determines that the evidence is plain, clear and convincing, it shall be admissible.

*F*

The defendant challenges the admissibility of the Lutz murder evidence on additional grounds. He claims that he could be found guilty but mentally ill in California (assuming California has such a law). He also contends that, contrary to this Court's ruling, a California court could rule inadmissible his confession to killing Lutz.

■ The purpose of evidence at the penalty hearing here would not be to determine the defendant's guilt or innocence of the California murder. While it is possible that a California court could suppress his confession, this Court did not. It found that the confession to Lutz's murder led to the confession to killing the defendant's parents. *State v. Cohen,* Del.Super., Cr.A. No. IN–90–02–0470 [sic] to 0477, Herlihy, J., 1991 WL 236929 (October 31, 1991). Therefore his confession is admissible here. It could have been used against him at a *trial* on the Delaware charges.

Therefore, the Court finds no reason why the State cannot introduce into evidence at the penalty hearing the defendant's confession. In its prior ruling, the Court deemed the confession reliable. The Court assumes at this point that the State will seek to introduce other evidence concerning that murder. Without deciding, the Court will assume the defendant's confession, coupled with the other evidence, will satisfy the threshold burden of proof.

■ The State has indicated it intends to produce eyewitnesses to the Los Angeles and Louisiana incidents. These again would appear to be sufficient to meet the standard herein. In addition, portions of the defendant's two statements relate to these events. In light of the authorities discussed earlier, therefore, it matters not as to the issue of admissibility that (1) the defendant is only under indictment for the Lutz murder, (2) no charges were filed for the Los Angeles incident, and (3) the Louisiana charges have been dropped.

The State has also indicated that Katie Adams, an ex-girlfriend of the defendant's, may testify about some uncharged criminal behavior. The State's proffer of what that

will be is unclear but it appears to involve eyewitness testimony again. Thus, it appears to meet the standard established herein.

### G

 In addition to these matters, the State seeks to introduce the defendant's use of false names, stealing and other means to avoid arrest. The State wants to introduce the defendant's statements that he was a "con man" and evidence of his drug use. Also, the defendant told the police, when on his sixteen-month trek while in Provincetown, Massachusetts, that he "was having very desperate, violent thoughts ... I was thinking of doing something very violent and I had a knife ... I was having thoughts of killing again...."

The Court views these activities and the urgings to kill again as going to the defendant's character and propensities, apart from showing commission of uncharged criminal offenses. The use of the defendant's statements alone to prove all of these matters is sufficient. *Frazier v. State*, 257 Ga. 690, 362 S.E.2d 351 (1987) (admissibility of bragging about killing people relating to character); *Potts*, 376 S.E.2d at 857 (offering to "give dead bodies" admissible to show character even if the defendant had not committed additional murders).

Certainly all of the evidence falls well within the broad parameters of non-statutory aggravating circumstances. *White*, 395 A.2d 1082; *Payne v. Tennessee*, 501 U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). The introduction of such evidence in this proceeding does not invoke the *corpus delicti* rule.

### H

 The final category of evidence the State seeks to introduce is that of homosexual relationships which the defendant discussed in his statements. The State argues that he engaged in these relationships to assist in avoiding capture and to obtain money to remain at large. The evidence that the defendant stole money or valuables from these persons is relevant. However, the Court does not find relevant to this case that

he had such relationships. The concern also is that jury may view such conduct morally reprehensible but that does not make it relevant. *Dawson*, 503 U.S. at ——, 112 S.Ct. at 1098, 117 L.Ed.2d at 318. Even within the broad range of evidence admissible in a penalty hearing, undue prejudice to the defendant must be avoided. *Gregg*, 428 U.S. at 203–204, 96 S.Ct. at 2939, 49 L.Ed.2d at 891–92.

### CONCLUSION

Accordingly, the defendant's motion to bar introduction of unadjudicated criminal conduct is **DENIED.** The defendant's motion to bar introduction of his homosexual encounters while avoiding capture is **GRANTED.**