James B. CLARK, Jr., Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 8, 1995.

Supreme Court of Delaware.

Submitted: Nov. 21, 1995.
Decided: Feb. 29, 1996.

Jerome M. Capone, Wilmington, Delaware, for Appellant.

Loren C. Meyers, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal, we consider the January 5, 1995, sentence of death imposed by the Superior Court on Defendant Below—Appellant James B. Clark, Jr. ("Clark") for the first degree murder of Clark's adoptive parents, James B. Clark, Sr. ("James") and Elizabeth C. Clark ("Elizabeth"). Clark has not pursued a direct appeal, as it is his expressed desire to be executed. However, an automatic appeal was docketed pursuant to 11 *Del.C.* § 4209(g). Clark's counsel argues that the sentence should be set aside on the following grounds: (i) the Superior Court failed to give appropriate consideration to

Clark's early release from prison; (ii) the Superior Court placed undue emphasis on a crime Clark committed 21 years prior to the murders; and (iii) Clark's sentence is not proportional to the sentences imposed for similar crimes. After reviewing the record and considering counsel's arguments, we find no error and, therefore, we affirm the sentence imposed by the Superior Court.

## I. PROCEDURAL HISTORY

On June 13, 1994, Clark was charged with two counts each of first degree murder, possession of a deadly weapon during the commission of a felony, and possession of a deadly weapon by a person prohibited. On September 8, 1994, the Superior Court held a hearing to determine whether or not Clark was competent to enter pleas of guilty to all charges. Two psychiatrists, one called by the defense and one by the prosecution, testified that Clark was competent and the Superior Court so concluded, based upon the undisputed evidence. The following day, Clark entered guilty pleas to all counts of the indictment.

The Superior Court conducted a non-jury penalty hearing from December 5 through December 15, 1994. In an exhaustive opinion issued on January 5, 1995, the Superior Court analyzed the aggravating and mitigating circumstances. The court concluded that three statutory aggravating circumstances had been proven beyond a reasonable doubt and that the aggravating circumstances heavily outweighed the mitigating circumstances. The Superior Court, therefore, concluded that Clark should be sentenced to death.

On January 11, 1995, this Court docketed an automatic appeal from the sentence imposed, and issued a stay of execution. Shortly thereafter, Clark filed a plenary appeal, which was consolidated with this automatic appeal by Order dated January 24, 1995. Two months later, Clark requested that his direct appeal be dismissed. His counsel filed a Motion to Remand for an evidentiary hearing to determine whether Clark's waiver of his appellate rights was knowing and intelligent. Clark's motion was granted and the

Superior Court conducted an evidentiary hearing on April 21, 1995 pursuant to this Court's Order of Remand.

The Superior Court made the following findings and conclusions, which were adopted and approved by this Court:

1) Clark unequivocally stated his desire to abandon his direct appeal.

2) At the hearing, Clark appeared to be mentally alert and responsive. His demeanor at the hearing was consistent with the findings of two psychiatrists, Dr. Stephen Mechanick and Dr. David Raskin, who testified that Clark was competent to enter guilty pleas as of September 8, 1994. There was no evidence that called Clark's competence into question and Clark was not under the influence of drugs, medication or alcohol at the time of the April 21, 1995, hearing.

3) Clark was fully aware of the consequences of abandoning his direct appeal. He was aware that, by waiving his direct appeal, Clark would significantly reduce his chances for any postconviction relief or other collateral attack on his guilty pleas, penalty hearing or sentence. In addition, Clark was fully aware that, by waiving his direct appeal, his execution would be more likely to occur and more likely to take place on an earlier date.

4) Clark was not acting under duress, threats from anyone, or improper influence of any kind. His decision to abandon his direct appeal was wholly voluntary.

5) Clark's decision was a deliberate, knowing, intelligent and voluntary waiver of his right to a direct appeal.

By Order dated May 3, 1995, Clark's direct appeal was dismissed.

Clark's automatic appeal was considered by this Court, *en banc*, after briefing and oral argument. One of the arguments raised by Clark's counsel precipitated a remand to the Superior Court for clarification and supplemental findings. After the Superior Court submitted its Supplemental Findings, the parties submitted additional memoranda, which have been fully considered by this Court.

## II.  FACTS

Clark has confessed and pled guilty to the unprovoked, premeditated murder of his adoptive parents. The murders took place on May 22, 1994. However, in order to understand Clark's conduct, and for purposes of reviewing the sentence imposed, it is appropriate to review Clark's entire life.

Clark was born on February 8, 1957, and was adopted by James and Elizabeth at the age of four months. As Elizabeth later wrote in a 1977 letter to Clark's attorney in a previous matter, "His first year with us was our happiest time. The rest was downhill all the way." Appellant's Appendix, A–66. By the time Clark was two years old, he was developing a pattern of pushing, slapping and striking other children frequently. He was expelled from two pre-kindergarten programs because of his behavior and began receiving psychotherapy and medication at the age of five.

In 1965, after Clark attacked a child and cut his face severely enough to require the child's hospitalization, Clark entered a resident psychiatric treatment program in Maryland. He remained there for three years. Clark returned home in 1968, but was unable to maintain acceptable behavior. In December 1969, after again being expelled from school, Clark was admitted to the Governor Bacon Health Center, where he received residential treatment for the next one and one-half years.

Clark was returned to his adoptive parents in July 1971. The Governor Bacon Health Center described Clark as "moderately improved" following a diagnosis of passive aggressive personality disorder and schizoid personality. Clark returned to public school in September 1971 and managed to complete the eighth grade, despite poor grades and serious behavior problems.

On March 5, 1973, at the age of 16, Clark abducted a three-year-old girl from her backyard. He brought the child to a nearby woods where he beat and choked her. Clark was found guilty of kidnapping and assault with intent to commit murder, but that conviction was reversed. *See Clark v. State,* Del.Supr., 344 A.2d 231 (1975). After re-

mand, Clark entered a Robinson plea to abduction of a child under twelve years of age and assault with intent to commit murder. On September 16, 1977, Clark was sentenced to 30 years in prison, with credit given for the four and one-half years previously served.

Clark remained in prison until April 22, 1994. During those 21 years, Clark's mental and emotional disorders continued to define his existence. In 1977, Clark pled guilty to assault third degree, after attacking a correctional officer. Clark's voluminous prison record was described by the Superior Court as, "replete with fights against other inmates, assaults upon correctional officers, threats made against correctional officers, possession of contraband, disobeying orders, etc." *State v. Clark*, Del.Super., Cr.A. Nos. IN94–06–0543–0548, Barron, J. (January 5, 1995) (Findings After Penalty Hearing at 35–36). Clark was written up more than 100 times for various rule infractions, including multiple suicide attempts. Not surprisingly, Clark earned very few good time credit days and he failed to take advantage of rehabilitative programs while incarcerated.

When Clark was released from prison, on April 22, 1994, he returned to his adoptive parents' home. Clark had no job skills and no drivers license. According to one correctional counselor, Clark was generally unprepared to return to society. James and Elizabeth were apprehensive about Clark's return to their home. They were both in their 70s, set in their ways, and their past familial relationship with Clark had been less than successful. Nonetheless, James and Elizabeth took Clark in and tried to be supportive.

Those efforts ended when James and Elizabeth were shot to death in the early afternoon on Sunday, May 22, 1994. Clark called the police and reported the homicides at approximately 9:30 that evening. When the police arrived, they found James in the garage and Elizabeth on her bed in the master bedroom. Clark was bleeding from the top of his head and was taken to the hospital for treatment. When Clark was interviewed at the hospital, he said that he had come home at about 7:30 p.m. and discovered James' body in the garage. Clark claimed that he was knocked unconscious while bending over his father's body. After Clark regained consciousness, he said that he washed blood from his face, then found his mother's body in the bedroom, and called the police.

Several days later, after the police had gathered significant additional evidence, Clark was arrested. On the way to the police station, after being given his *Miranda* warnings, Clark confessed. He stated that he shot his parents following an argument over Clark's beer drinking. Clark explained that he planted evidence to make it look like the murders were precipitated by a burglary. However, Clark maintained that the murders were not planned.

In a letter Clark wrote to the prosecutor on June 23, 1994, Clark gave a third version of events. He wrote that he planned the murders and carried them out without any provocation. James and Elizabeth were both asleep when they were killed. Clark used two guns and different brands of ammunition, so that it would look like there had been two killers. He also brought hair dressing from the prison to plant as evidence. He wrote that he committed the murders out of greed. The Superior Court reached no conclusion as to Clark's motivation. However, based upon all of the evidence, including medical and ballistic evidence, the Superior Court concluded that Clark's last statement was the most accurate description of how the crimes were committed.

### III. STATUTORY REVIEW

■ Pursuant to 11 *Del.C.* § 4209(g)(2), this Court independently reviews the death sentences imposed on Clark by the Superior Court. We must decide whether: (i) the Superior Court's finding of at least one statutory aggravating circumstance is supported by the record; (ii) the sentences were imposed arbitrarily or capriciously; and (iii) the sentences were disproportionate to those imposed in similar cases arising under the statute. This Court undertakes its statutory responsibility with keen awareness that "death as a punishment is unique in its severity and irrevocability." *Sullivan v. State*, Del.Supr., 636 A.2d 931, 948–49 (1994) *cert.*

*denied,* —— U.S. ——, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994) (citations omitted).

The procedure followed by this Court in performing its statutory review is settled:

This Court has traditionally commenced its mandatory statutory review by initially addressing subparagraph (b) of Section 4209(g)(2). *Pennell v. State,* 604 A.2d [1368] at 1375 [Del.Supr.1992]. That subsection requires this Court to examine the evidence in the record to determine whether it supports the findings of the Superior Court judge which relate to the establishment of statutory aggravating circumstances. 11 *Del.C.* § 4209(e). Thereafter, two additional inquiries are required by subparagraph (a) of Section 4209(g)(2): First, whether the Superior Court judge's imposition of the death penalty was either arbitrary or capricious; and second, whether the death penalty imposed was disproportionate to the penalty imposed in similar cases arising under this statute. *Pennell v. State,* 604 A.2d at 1375; *Riley v. State,* Del.Supr., 496 A.2d 997, 1026 (1985) [*cert. denied* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986) ]. "Each question requires a consideration of the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender." 11 *Del.C.* § 4209(g)(2); *Pennell v. State,* 604 A.2d at 1375.

*Red Dog v. State,* Del.Supr., 616 A.2d 298, 306–307 (1992).

## A. Statutory Aggravating Circumstances

The Superior Court concluded that three statutory aggravating circumstances had been proven beyond a reasonable doubt: (i) Clark was previously convicted of a felony involving the use of, or threat of, force or violence upon another person; (ii) Clark's conduct resulted in the deaths of two persons where the deaths were a probable consequence of Clark's conduct; and (iii) both victims were over the age of 62 years. 11 *Del.C.* § 4209(e)(1)i, k and r.

■ There is no dispute as to the existence of any of the three statutory aggrava-

ting circumstances, nor could there be. Clark's 1977 plea agreement establishes beyond a reasonable doubt that Clark was convicted of a felony that involved the use of violence upon another person—assault with the intent to commit murder. Similarly, there can be no doubt but that Clark's conduct resulted in the death of two persons. He pled guilty to the charges of first degree murder in connection with the shooting deaths of James and Elizabeth. Finally, the State established, through the victims' drivers licenses, that James and Elizabeth were 72 and 71 years of age, respectively, at the time of the murders. This undisputed record evidence clearly supports the Superior Court's conclusion that the three named statutory aggravating circumstances were proven beyond a reasonable doubt.

## B. Whether the Sentences were Arbitrary and Capricious

Counsel for Clark argues that the Superior Court committed two errors in its consideration of aggravating and mitigating circumstances and that, as a result of those errors, its decision was arbitrary and capricious.

### (i) Clark's Early Release from Prison

In April 1994, when Clark was released from prison, he had served 21 years of a 32–year sentence. The evidence presented at the penalty hearing indicated that Clark did not use those 21 years productively and that, at the time of his release, Clark was ill-equipped to return to society. In light of these facts, Clark's counsel argues that Clark's early release from prison should have been considered a mitigating factor in the Superior Court's sentencing decision.

The Superior Court made reference to Clark's early release and, in a footnote, criticized the Department of Correction's practices with respect to good time credits. However, the Superior Court did not expressly address the weight given to Clark's early release as a mitigating or aggravating factor. Accordingly, this Court remanded to the Superior Court for clarification. In its Supplemental Findings After Remand, the Superior Court explained that it did not consider Clark's early release as an aggravating

or mitigating factor. The trial court questioned the relevance of this fact, noting that, "the fortuitous release of James B. Clark, Jr., from prison bears neither on the circumstances or details of the commission of the offense nor on his character and propensities." *State v. Clark,* Del.Super., Cr.A. No. IN94–06–0543–0548, Barron, J. (September 29, 1995) (Supplemental Findings After Remand at p. 7). Nonetheless, the Superior Court concluded that, if Clark's early release were considered to be a mitigating factor, the sentence would remain the same, as the aggravating factors, "would still clearly outweigh the mitigating circumstances by a preponderance of the evidence." *Id.* at p. 9.

Counsel for Clark argues that the Superior Court missed the thrust of his argument and, therefore, failed to give adequate consideration to Clark's early release as a mitigating factor. According to counsel, the Department of Correction is partially responsible for James' and Elizabeth's deaths. Although Clark committed the murders, the Department of Correction gave him the opportunity by releasing him before he had served his full term. It is not enough to say, as the Superior Court did, that Clark would have been released at some point. One of the circumstances of these offenses is the fact that Clark was out of prison and able to commit them. Thus, according to counsel, the Superior Court erred in concluding that Clark's early release was irrelevant or, as the court put it, "fortuitous."

■ We cannot agree that the Department of Correction shares any blame for Clark's conduct. Clark was in full control of his faculties when he planned and carried out the brutal murders. However, we agree that Clark's early release from prison, in light of his violent disposition, is a factor that should be considered in the sentencing decision. It is a circumstance relevant to the commission of the offenses. The Superior Court initially acknowledged the early release issue, but gave it no weight as a mitigating or aggravating factor. After remand, the Superior Court continued to view this issue as marginally relevant, at best. However, the Superior Court concluded that, even if Clark's early release were a relevant mitigating factor, the

aggravating factors would continue to far outweigh the mitigating factors. Accordingly, the Superior Court found that the sentence should not be changed.

■ The record fully supports the Superior Court's conclusion that, even after considering Clark's early release as a mitigating factor, the aggravating factors far outweigh the mitigating factors. Clark committed these execution-style murders only one month after leaving prison. The victims were his elderly adoptive parents; the only people who had ever attempted to nurture and support Clark. The brutality of the murders and the defenselessness of the victims was compounded by Clark's prior vicious attack on a three-year-old child. The Superior Court determined that these aggravating factors far outweigh the mitigating factors of Clark's mental disorders, his cooperation with the police, his remorse, and his early release from prison. We find that decision to be neither arbitrary nor capricious. Rather, it was the product of a rational, logical, deductive process.

### (ii) The Weight Given to Clark's Earlier Crime

The Superior Court considered Clark's 1973 assault on the three-year-old child as both a statutory and non-statutory aggravating factor. Counsel for Clark does not challenge the use of Clark's conviction of assault with intent to commit murder as a statutory aggravating factor. He argues that the circumstances of that 1973 crime should not have been "double counted" by being given separate weight as a non-statutory aggravating circumstance.

In essence, counsel for Clark asks this Court to revisit its holding in *Ferguson v. State,* Del.Supr., 642 A.2d 772, 781–783 (1994). We conclude that the facts in this case do not raise the "double counting" issue addressed in *Ferguson.* A majority of this Court held, in *Ferguson,* that it was not plain error to permit the jury to weigh robbery and pecuniary gain as separate aggravating circumstances. The majority opinion noted that robbery and pecuniary gain are not always duplicative factors and that there is, therefore, a rational basis for the statutory

scheme under which these two factors are treated separately. In their concurring opinion, two Justices acknowledged the conceptual validity of the majority's holding. However, since robbery and pecuniary gain were entirely redundant circumstances under the facts of that case, the concurring Justices felt that the jury should not have been permitted to double count them.

■ This case is distinguishable from *Ferguson* in two respects. First, there was no jury in Clark's penalty hearing. As a result, there is no danger that the jury may have been confused. Second, there was no double counting involved. There are two different aspects to Clark's prior crime. The fact that he committed a felony involving violence upon another person establishes one statutory aggravating factor. The circumstances of that crime bear upon a different consideration—the character and propensities of the offender. The Superior Court properly considered both aspects of the 1973 crime in its weighing process and we find the "double counting" argument to be without merit.

## C. Proportionality Review

■ The remaining aspect of this Court's statutory review is the determination of whether Clark's death sentence is proportionate to the penalty imposed in similar cases. To make this determination, this Court must analyze the "universe" of first degree murder cases in which there was a penalty hearing and the sentence imposed has become final. Consistent with our holding in *Lawrie v. State,* Del.Supr., 643 A.2d 1336 (1994) *cert. denied,* —— U.S. ——, 115 S.Ct. 646, 130 L.Ed.2d 551 (1994), we consider those cases governed by the 1991 amendment to the death penalty statute to be directly applicable and therefore most persuasive in the proportionality analysis. Cases decided under the earlier statute still may be considered, but normally would not be considered "significantly persuasive." *Id.* at 1350.

We recognize that a "definitive comparison of the universe of cases is almost impossible." *Pennell v. State,* Del.Supr., 604 A.2d 1368, 1376 (1992). "[S]entencing decisions involve 'difficult and uniquely human judgments that

defy codification and that buil[d] discretion, equity and flexibility into a legal system.'" *Wright v. State,* Del.Supr., 633 A.2d 329, 342–343 (1993) (quoting *McCleskey v. Kemp,* 481 U.S. 279, 311, 107 S.Ct. 1756, 1777, 95 L.Ed.2d 262 (1987)). Recognizing these limitations, this Court looks to the factual background of relevant cases to determine the proportionality of the sentence imposed. *Shelton v. State,* Del.Supr., 652 A.2d 1 (1995).

■ Clark's crimes bear similarities to other recent cases in which the death penalty was imposed. First, Clark committed a double murder. Multiple murders frequently have resulted in a death sentence. *See Weeks v. State,* Del.Supr., 653 A.2d 266, 274 (1995) (two victims killed in "cold-blooded, calculated execution-style manner"); *Lawrie v. State, supra* (four persons killed by arson); *Red Dog v. State, supra* (five deaths during the course of lengthy criminal career); *Pennell v. State, supra* (four women victims of this serial killer). Another factor common to Clark's crimes and other death penalty cases is the fact that the crimes were unprovoked, cold-blooded murders of helpless victims. *See Weeks v. State, supra; Shelton v. State, supra; Lawrie v. State, supra; Wright v. State,* Del.Supr., 671 A.2d 1353 (1996). Finally, as in several other death penalty cases, Clark's victims were elderly people. *Shelton v. State, supra; Outten and Shelton v. State,* Del.Supr., 650 A.2d 1291 (1994); *Sullivan v. State,* Del.Supr., 636 A.2d 931 (1994) *cert. denied,* —— U.S. ——, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994).

Counsel for Clark argues that the death sentence is not proportional when compared to the one other case involving a child who murdered his parents, *see State v. Cohen,* Del.Super., 634 A.2d 380 (1993), or when compared to other murder cases in which the defendant suffered from a mental infirmity. *See Sanders v. State,* Del.Supr., 585 A.2d 117 (1990); and *State v. Shields,* Del.Super., 593 A.2d 986 (1990). We disagree. In *Cohen,* the defendant pled guilty but mentally ill and did not share Clark's long history of violent criminal behavior. *Sanders* and *Shields* both preceded the 1991 amendment to the death penalty statute and, therefore, have limited value in the proportionality analysis. More-

over, although Clark suffers from mental disorders, none of those infirmities affected his ability to distinguish right from wrong or his ability to control his own behavior.

Clark planned these brutal killings apparently even before he left prison. His elderly adoptive parents were resting in their own home when Clark shot each one in the head. This savage, unprovoked attack followed years of violent behavior in prison and a similar heinous assault on a small child. After careful review, we are satisfied that this case is substantially similar, for proportionality purposes, to other post–1991 death penalty cases where there were multiple killings, elderly victims and premeditation. We conclude that the death sentences here are warranted and are not disproportional.

## IV. CONCLUSION

After carefully reviewing the entire record, and considering all issues raised by Clark's counsel, this Court concludes that the death sentences are appropriate pursuant to 11 *Del.C.* § 4209. Accordingly, the judgment of the Superior Court sentencing Clark to death for the murders of James B. Clark, Sr., and Elizabeth C. Clark is AFFIRMED. This matter is REMANDED to Superior Court for further proceedings in accordance with this opinion. This Court's Order of January 11, 1995, staying the execution of Clark's death sentences shall terminate upon the issuance of this Court's mandate. The Clerk of this Court is directed to cause a copy of this Opinion to be hand-delivered forthwith to the attorneys for the parties and to the Commissioner of the Department of Correction.

## APPENDIX

FIRST DEGREE MURDER CASES THAT WENT TO PENALTY HEARINGS UNDER 11 *DEL.C.* § 4209 AS AMENDED IN 1991 IN 68 DEL.LAWS CH. 189

The following list of cases is a complete restatement of all first degree murder cases decided under 11 *Del.C.* § 4209 as amended in 1991 by 68 Del.Laws Ch. 189, that have gone to a penalty hearing. It incorporates and supersedes the appendices in our deci-

sions in *Lawrie v. State,* Del.Supr., 643 A.2d 1336, 1352–56 (1994); *Ferguson v. State,* Del. Supr., 642 A.2d 772, 792 (1994); *Gattis v. State,* Del.Supr., 637 A.2d 808, 823–24 (1994); *Dawson v. State,* Del.Supr., 637 A.2d 57, 69 (1994); *Sullivan v. State,* Del.Supr., 636 A.2d 931, 953–54 (1994); *Wright v. State,* Del. Supr., 633 A.2d 329, 344 (1993); *Red Dog v. State,* Del.Supr., 616 A.2d 298, 312–15 (1992); *Pennell v. State,* Del.Supr., 604 A.2d 1368, 1378–79 (1992); *Dawson v. State,* Del.Supr., 581 A.2d 1078, 1109–11 (1990).

### Cases Decided Under 11 *Del.C.* § 4209

### As Amended in 1991 by 68 Del.Laws Ch. 189

| | |
|---|---|
| Case Name: | Meri–Ya C. Baker |
| Case No.: | IN90–12–1039, 1040 |
| County: | New Castle |
| Sentence: | Life Imprisonment |

| | |
|---|---|
| Case Name: | James B. Clark, Jr. |
| Case No.: | IN94–06–0543 through 0548 |
| County: | New Castle |
| Sentence: | Death—Automatic Appeal Pending |

| | |
|---|---|
| Case Name: | Charles M. Cohen |
| Case No.: | IN90–02–0474 thru 0477 |
| County: | New Castle |
| Sentence: | Life Imprisonment |

| | |
|---|---|
| Case Name: | David F. Dawson |
| Case No.: | IK86–0024; IK87–01–0841; 0843, 0845 |
| County: | New Castle (venue changed) |
| Sentence: | Death—Postconviction Appeal Pending |

| | |
|---|---|
| Case Name: | Byron S. Dickerson |
| Case No.: | IN90–12–1041, 1042 |
| County: | New Castle |
| Sentence: | Life Imprisonment |

| | |
|---|---|
| Case Name: | Cornelius E. Ferguson |
| Case No.: | IN91–10–0576, 0578 thru 0581 |
| County: | New Castle |
| Sentence: | Death—Postconviction Appeal Pending |

| | |
|---|---|
| Case Name: | Robert A. Gattis |
| Case No.: | IN90–05–1017 thru 1019, 1106, 1107 |
| County: | New Castle |
| Sentence: | Death—Postconviction Appeal Pending |

| | |
|---|---|
| Case Name: | Arthur Govan |
| Case No.: | 92–01–0166 |
| County: | New Castle |
| Sentence: | Life Imprisonment |

| | |
|---|---|
| Case Name: | Robert W. Jackson, III |
| Case No.: | IN–92–04–1222 thru 1227; IN92–04–1348 and 1349 |
| County: | New Castle |
| Sentence: | Death—Automatic Appeal Pending |

| | |
|---|---|
| Case Name: | David J. Lawrie |
| Case No.: | IK92–08–0179 thru 0185; IK92–09–0148 and 0149 |
| County: | Kent |
| Sentence: | Death—Postconviction Appeal Pending |

Case Name: Frank W. Moore, Jr.
Case No.: 92–09–0001, 0002, 1001, 2001, 3001
County: Sussex
Sentence: Life Imprisonment

Case Name: Jack F. Outten
Case No.: IN92–01–1144 and 1145
County: New Castle
Sentence: Death

Case Name: James W. Perez
Case No.: IN93–02–1191 and 1197
County: New Castle
Sentence: Life Imprisonment

Case Name: James Allen Red Dog
Case No.: IN91–02–1495 to 1503
County: New Castle
Sentence: Death

Case Name: Jose Rodriguez
Case No.: IN93–020–1121
County: New Castle
Sentence: Life Imprisonment

Case Name: Reginald N. Sanders
Case No.: IK86–03–0898, 0899 and 0903
County: New Castle (venue changed)
Sentence: Life Imprisonment

Case Name: Nelson W. Shelton
Case No.: IN92–01–1154 and 1155
County: New Castle
Sentence: Death

Case Name: Steven W. Shelton
Case No.: IN92–01–1149 and 1150
County: New Castle
Sentence: Death

Case Name: Donald J. Simmons
Case No.: IN92–01–0770 thru 0772; IN92–01–1140 and 1141
County: New Castle
Sentence: Life Imprisonment

Case Name: Willie G. Sullivan
Case No.: IK–01–0192 thru 0196; IK92–02–0001; IK92–03–0022
County: Kent
Sentence: Death—Postconviction Appeal Pending

Case Name: Antonio L. Taylor
Case No.: IK94–06–0047 through 0052
County: Kent
Sentence: Life Imprisonment—Appeal Pending

Case Name: Charles H. Trowbridge
Case No.: IK91–07–0175; IK91–09–0032 thru 0034
County: Kent
Sentence: Life Imprisonment

Case Name: John E. Watson
Case No.: IN91–09–0020 thru 0025
County: New Castle
Sentence: Life Imprisonment

Case Name: Dwayne Weeks
Case No.: 92–01–0167
County: New Castle
Sentence: Death—Postconviction Appeal Pending

Case Name: Roy R. Williamson
Case No.: S93–05–0249 thru 0255 and S93–05–1249 and 2249
County: Sussex
Sentence: Life Imprisonment

Case Name: Jermaine M. Wright
Case No.: IN91–04–1947 thru 1953
County: New Castle
Sentence: Death